**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1999-CT-00705-SCT**

*STATE OF MISSISSIPPI*

*v.*

*TIMOTHY McGRONE a/k/a THOMAS McCALLAHAN*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/06/1999 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | REBECCA W. WOOTEN |
| | ASSISTANT DISTRICT ATTORNEY |
| ATTORNEYS FOR APPELLEE: | THOMAS M. FORTNER |
| | ROBERT M. RYAN |
| | BRENDA GALE JACKSON |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL- FELONY |
| DISPOSITION: | AFFIRMED -10/11/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/1/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Timothy McGrone was indicted for one count of motor vehicle theft, a second count of aggravated assault on a law enforcement officer, a third count of aggravated assault and a fourth count of simple assault on a law enforcement officer by the Hinds County Grand Jury, all arising out of one incident. McGrone moved to have the last count, simple assault on a law enforcement officer, dismissed because the police department lost what McGrone alleged was crucial evidence in this case, the pants he was wearing when he was finally shot and arrested by the Jackson Police Department. The Hinds County Circuit Court agreed and dismissed the simple assault count. The State appealed. The Court of Appeals affirmed. We granted certiorari to solely consider the legal standard concerning preservation of evidence by the State. After due consideration, we find that the judgments of the Circuit Court and the Court of Appeals should be affirmed, but for different reasons than those cited by the Court of Appeals.

**FACTS**

¶2. The following statement of facts is taken from the opinion of the Court of Appeals:

> A truck belonging to Milton Dixon was stolen from his job site at Galloway Elementary School in
> Jackson. Shortly after the broadcast of the description of the stolen truck over police radio, an officer
> with the Jackson Police Department made visual contact with the truck and its occupants. Timothy

McGrone was driving the truck and sped away from the police officer at a high rate of speed. A transmission went out over the police radio that McGrone would not heed police efforts to stop the truck and was attempting to elude the police.

Patrolman Robert Bufkin heard this call and set up a road block with his patrol car in an attempt to stop the speeding truck. Deborah Goldman was riding with Bufkin at the time as part of her dispatcher training. Bufkin exited the patrol car, but Goldman remained seated inside the car. McGrone drove the speeding truck at Bufkin in an attempt to run over him, forcing Bufkin to dive out of its path. This action by McGrone gave rise to the charge of aggravated assault on a law enforcement officer. McGrone then drove the truck into the side of the patrol car where Goldman was seated. This action gave rise to the second charge of aggravated assault. McGrone then lost control of the truck, causing it to crash into the side of a house. McGrone then fled on foot. Patrolman Jonathan Crawford came upon the scene and ordered McGrone to halt. According to the State, as Crawford attempted to draw his service revolver, McGrone lunged at Crawford and grabbed his arm. This action by McGrone gave rise to the simple assault charge. Fearing that McGrone would obtain Crawford's weapon, Crawford shot McGrone once in the leg. McGrone claims to have been fleeing at the time he was shot by Crawford and that a gunshot residue test of his pants would have revealed that he was not in close proximity to Crawford at the time he was shot.

***State v. McGrone***, No. 1999-CA-00705-COA ¶ 4-5 (Miss. Ct. App. Jan. 16, 2001).

¶3. McGrone was treated at the hospital for the gunshot wound to his leg. He was subsequently indicted for motor vehicle theft, aggravated assault on a law enforcement officer, aggravated assault and simple assault on a law enforcement officer by the Hinds County Grand Jury. McGrone filed a Motion for Discovery, a Motion to Compel Discovery and a Motion to Dismiss the simple assault charge. McGrone contended that his pants were crucial evidence in his defense of the charge of simple assault on a law enforcement officer.

¶4. At the hearing on the Motion to Compel Discovery and Motion to Dismiss, Mike Boyanton, a nurse at the hospital where McGrone was taken, testified that hospital records indicated the Jackson Police Department took possession of McGrone's clothing and any possible valuables. The State was unable to produce McGrone's clothing at the hearing.

¶5. At the conclusion of the hearing the circuit court found that the evidence existed and was given to the Jackson Police Department, that the evidence could have been of an exculpatory nature, and that the JPD knew or should have known this when it took possession of the evidence. As a result the circuit court found that Count 4 of the indictment against McGrone, simple assault on a law enforcement officer, would be dismissed. The circuit court made two additional observations: first, that no JPD police officers appeared at any of the hearings on the motions filed by McGrone despite being subpoenaed (the hearing began on March 29, 1999, and was continued on April 5, 1999); second, that it would or could make no finding as to the circumstances of the non-existence of the pants, i.e. whether the pants were lost or destroyed, negligently or intentionally.

¶6. On direct appeal the Court of Appeals, by a vote of 5-4, affirmed. The Court of Appeals found that certain requirements for cases involving preservation or absence of evidence provided in U.S. Supreme Court authority, specifically ***California v. Trombetta***, 467 U.S. 479,104 S.Ct. 2528, 81 L. Ed 2d 413 (1984), had been met. The Court of Appeals further found that the circuit court was not required to find that the State, or the police, had acted in bad faith in losing the evidence in question before the charge in

question could be dismissed.

## DISCUSSION

### I. THE COURT OF APPEALS ERRED IN AFFIRMING THE TRIAL COURT'S DISMISSAL OF THE SIMPLE ASSAULT COUNT, AS A FINDING OF BAD FAITH ON THE PART OF THE STATE IN THE DISAPPEARANCE OF THE EVIDENCE WAS REQUIRED TO FIND A VIOLATION OF MCGRONE'S DUE PROCESS RIGHT.

¶7. The seminal case on this subject is the U.S. Supreme Court's decision in *California v. Trombetta*, 467 U.S. 479,104 S.Ct. 2528, 81 L. Ed 2d 413 (1984). The Supreme Court found in *Trombetta*, 467 U.S. at 488-89, that the State's duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta* dealt with the preservation of breath samples in DUI cases, and because the aforementioned standard was not met, and because "[i]n failing to preserve breath samples for respondents, the officers here were acting 'in good faith and in accord with their normal practice,'" the Supreme Court reversed the grant of new trials and exclusion of the intoxilyzer results. *Trombetta*, 467 U.S. at 488.

¶8. *Trombetta* has been cited on numerous occasions by this Court. *See Banks v. State*, 725 So.2d 711 (Miss. 1997); *Taylor v. State*, 672 So.2d 1246 (Miss. 1996); *Tolbert v. State,* 511 So.2d 1368 (Miss. 1987). The standard that developed after *Trombetta* is that the evidence in question must meet the two-part test stated above, that (1) evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and (2) be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. In addition, "the prosecution's destruction of evidence must not have been in bad faith." *Tolbert*, 511 So.2d at 1372; *see also Taylor*, 672 So.2d at 1271 (citing *Tolbert*).

¶9. The question of whether *Trombetta* actually mandated a finding of bad faith on the part of the State in such cases was no longer open to interpretation after the U.S. Supreme Court's decision in *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). *Youngblood* dealt with a failure to refrigerate clothing worn by a victim of a sexual assault and to test the clothing for semen samples. In *Youngblood*, 488 U.S. at 58, the U.S. Supreme Court stated: "We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." The *Youngblood* rule was applied by this Court in *Holland v. State*, 587 So.2d 848, 869 (Miss. 1991).

¶10. In this case the Court of Appeals relied on this Court's decision in *Banks v. State* to find that there was no requirement of finding of bad faith on the part of the State in the destruction of the evidence in question. *Banks* dealt with the destruction of a bologna sandwich which allegedly linked Banks to a murder by bite marks made in the sandwich. This Court found that Banks had met the two part test of *Trombetta*, and that a new trial was required because of the admission of the State's evidence concerning the sandwich. This Court made little mention of the State's bad faith or lack thereof except to note: "Although Banks is entitled to no presumption since the trial court found (on substantial evidence) that there had been no showing of any intentional effort on the part of the State to deprive the defendant of a view of the sandwich,

it nevertheless seems that the bologna sandwich was obviously significant to the defense." *Banks*, 725 So.2d at 715.

¶11. The Court of Appeals seemed to be making an argument to the effect that this Court, in *Banks v. State*, determined that this State's due process protections, in preservation of evidence cases, were broader that those announced by the U.S. Supreme Court. On the other hand, the Court of Appeals also made the following statement: "In fact, this Court knows of no case authority or rationale that would deprive the lower court of its authority to find that the *Trombetta* standard of materiality is met because of the absence of bad faith." *McGrone* at ¶ 31. While bad faith may not be a prong of the two-part test for materiality under *Trombetta,* it is a requirement for a due process violation in a preservation of evidence case under *Youngblood*, *Tolbert*, *Taylor*, and the Court of Appeals decision in *Trollinger v. State*, 748 So.2d 167 (Miss. Ct. App. 1999). We therefore clarify that the following is required in order to find a due process violation by the State in a preservation of evidence case: (1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the prosecution's destruction of the evidence must have been in bad faith.

¶12. In this case the record shows that parts (1) and (2) of this test were met. The remaining question is whether the defendant can show bad faith on behalf of the prosecution. In this case it would have been shown through the testimony of the police officers who handled the clothing in question. Counsel for McGrone subpoenaed certain police officers for two separate hearings in this case, but the officers never appeared. The State may not, through the police officer's intentional actions, negate the only means the defendant has for proving a due process violation due to destruction of evidence under *Trombetta* and *Youngblood*. Because the police officer's actions made a determination by the circuit court on the issue of bad faith impossible, the judgment of the circuit court and the Court of Appeals will be affirmed.

## CONCLUSION

¶13. This Court finds that destruction of evidence in bad faith is a requirement for a due process violation based on the State's failure to preserve evidence. Where the State's actions absolutely prevent a defendant in a criminal case from presenting proof on this issue, we will consider the requirement of bad faith to have been proven. The judgment of the Court of Appeals is affirmed.

¶14. **AFFIRMED.**

> **PITTMAN, C.J., BANKS, P.J., WALLER, COBB AND EASLEY, JJ., CONCUR. MILLS, J., CONCURS IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND DIAZ, J.**

> **MILLS, JUSTICE, CONCURRING IN RESULT:**

¶15. I concur in the result. The majority applies the rule of law dealing with preservation of evidence in this case correctly as it currently stands. However, since I disagree with the existing rule of law regarding the test for due process violations in preservation of evidence, I would modify the rule and urge the majority to reconsider the logic of this test. Mississippi law indeed requires a showing of the State's bad faith before a constitutional violation may be proved in a preservation of evidence case. The majority accurately notes that we have found this element necessary in a number of cases. *See, e.g.*, *Taylor v. State*, 672 So. 2d 1246,

1271 (Miss. 1996); *Holland v. State*, 587 So. 2d 848, 869 (Miss. 1991); *Tolbert v. State*, 511 So. 2d 1368, 1372 (Miss. 1987). But we in appellate work sometimes mistake string cites for logic. Just because a rule is old does not mean it is right.

¶16. The majority finds that the following is required to show a due process violation by the State in a preservation of evidence case: (1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the prosecution's destruction of the evidence must have been in bad faith. I propose that the third element be dropped from the test.

¶17. The State's bad faith becomes irrelevant when the search for the truth is the task at hand. Whether the State is simply negligent in evidence preservation or whether it willfully destroys evidence, the result is the same. Useful evidence is unavailable, and the fact-finding effort is hindered or, in many cases, rendered impossible.

¶18. The original two-part test developed from *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L. Ed. 2d 413 (1984), is geared toward fact-finding. With this test, the search for the truth is limited by the bounds of objectivity; for it focuses on the value of the evidence and the attainability of comparable evidence. The fact finder need not enter the State's mind. A bad faith element only adds confusion to the test. The search for the truth is best illuminated by objectivity. A required showing of bad faith injects subjectivity into the case, thereby rendering the truth seeker a mind reader as opposed to a fact finder.

¶19. Retention of the bad faith element discourages the preservation of potentially exculpatory evidence and encourages duplicitous testimony from the State when justifying the absence or loss of such evidence. We should enounce a rule of law in this preservation of evidence case that will eliminate this problematic possibility. In other words, bad faith should be stricken from the test.

**McRAE, P.J., AND DIAZ, J., JOIN THIS OPINION.**