# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-KA-01556-SCT

*VERINA CHILDS a/k/a VERINA M. CHILDS a/k/a*
*VERINA MARIE CHILDS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/2011 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID NEIL McCARTY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/23/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Verina Childs ("Verina") was convicted of murdering her husband, Douglas Childs

("Doug"), on August 4, 2011, following a four-day jury trial.  She was sentenced to life

imprisonment in the custody of the Mississippi Department of Corrections (MDOC).  After

her conviction, Verina filed a motion for a new trial, which was denied.  Verina now appeals

from the judgment of the Circuit Court of Oktibbeha County, Mississippi.

¶2.     On appeal, Verina argues three issues:

**I.** **The State violated Childs's due-process rights by destroying evidence in violation of state law.**

**II.** **Childs was denied her fundamental right to alternative theories of defense**.

**III.** **The State failed to prove deliberate-design murder.**

Because we find that the trial court did not err in its conviction of Verina, we affirm on all three issues.

## STATEMENT OF THE FACTS

¶3.    Verina and Doug Childs were members of a hunting club in Oktibbeha County, Mississippi. On November 22, 2009, just after daybreak, Danny Fly, a local hunter, noticed Doug Childs's body lying in the edge of the woods. Fly had seen Doug's truck earlier that morning but had heard no gunshot prior to finding the body. Doug had received a single gunshot wound to the left side of his upper back. The projectile was fired by a Marlin 30/30 ("30/30") hunting rifle that belonged to Verina.

¶4.    Verina and Doug had left home just before daybreak to go hunting. Verina was carrying her 30/30, and shortly after arriving in the woods, she and Doug separated. Verina later told the investigator that she had a stomach ache, so she sent Doug a text stating that she was going back to the house. After using the restroom at home, she unloaded her rifle, removed her hunting clothes, and sent Doug a text stating that she was going to clean around the house. Shortly thereafter, Tina Reed pounded on the door and asked Verina to come with her. They went to the shooting scene and saw Doug's body lying on the ground.

¶5.    Deputy Commander Mahyar Netadj, following Verina's consent to search, collected the rifle and several pieces of clothing from the house. Verina told Netadj that she had never

2

fired the rifle but had unloaded it because she did not like to keep loaded guns in the house. However, the other guns in the house all were loaded. Lying next to the 30/30 was a gun-cleaning kit.

¶6. The only witness for Verina's case-in-chief was her son, Jonathan Coker. Verina did not testify and elected to remain silent.

## DISCUSSION

### I. The State violated Childs's due-process rights by destroying evidence in violation of state law.

¶7. Verina argues that her due-process rights were violated when the State allegedly destroyed fingerprint and DNA evidence on the Marlin 30/30. She argues that Mississippi Code Section 99-49-1 requires the State to preserve exculpatory evidence. Section 99-49-1, the Preservation Law, requires that any evidence in a murder, manslaughter, or felony sexual-assault case in the possession of the State on July 1, 2009, shall be preserved by the State consistent with legislative intent. Miss. Code Ann. 99-49-1(4) (Supp. 2012).

¶8. The State argues that none of Verina's due-process rights were violated, because no evidence was destroyed in violation of state law. The State alleges that the Preservation Law focuses on biological evidence that has been found to exist and identified, not speculative biological evidence that has yet to be collected or come into being. At trial, Investigator Brett Watson testified as to why the 30/30 had not been tested for fingerprints. He stated that, at the time they started to investigate, he had believed Doug's death was murder. Accordingly, if Verina had not killed her husband, a murderer was at large. He said he had to make a choice between ballistic testing, which eventually destroyed the fingerprints on the

3

rifle, and fingerprint examination. When the ballistics report came back from the crime lab, the slug taken from Doug's body matched the 30/30 Verina had carried that day.

¶9. The 30/30 was the rifle Verina admitted to carrying that day as well as the rifle that was found laying on their bed after Doug's body was found on the hunting ground. A fingerprint test of the gun would have revealed Verina's fingerprints, as she already had admitted owning and carrying the rifle that morning. No evidence was presented that the rifle was ever out of Verina's possession from the time Verina left the house to go hunting until the investigators seized the rifle.

¶10. Childs claims that the destruction of any DNA or fingerprint evidence that prossibly could have been found on the gun amounts to a due-process violation. When such a claim is made due to destruction of evidence, we apply a three-prong test to determine whether the destruction does, in fact, abridge the defendant's due-process rights. *Murray v. State*, 849 So. 2d 1281, 1285-86 (Miss. 2003). For the defendant to be successful, she must show all three of the following: (1) the evidence must be apparently exculpatory, (2) there must be no comparable evidence available to the defendant, and (3) law enforcement's destruction of the evidence must have been in bad faith. *Id*. *See also* ***California v. Trombetta***, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984); ***Arizona v. Youngblood***, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 381 (1988).

¶11. As to the first prong, we do not find that the possible evidence lost was apparently exculpatory. In ***McGrone v. State***, 798 So. 2d 519 (Miss. 2001), this Court identified an example of what type of evidence would be of an apparent exculpatory nature. McGrone was shot in the leg by a police officer before he was apprehended and wanted to procure the

4

pants he was wearing at the time to show that he was, in fact, attempting to flee when he was shot by the officer. *McGrone*, 798 So. 2d at 521. The *McGrone* Court deemed the pants to be apparently exculpatory. *Id*. at 523. In the case *sub judice,* it is actually not known whether such evidence was present on the gun at all. Its very existence is nothing more than a hypothetical, and we have held that such speculation that such evidence would aid the defense is not sufficient to satisfy the first prong. *Tolbert v. State*, 511 So. 2d 1368, 1372 (Miss. 1987) (". . . [T]he mere possibility the evidence might aid the defense does not satisfy the constitutional materiality standard.") (quoting *United States v. Binker*, 795 F. 2d 1218, 1230 (5th Cir. 1986)). Accordingly, we find that Childs has failed to prove the first prong of the test.

> **II.   Childs was denied her fundamental right to alternative theories of defense.**

¶12.   Verina argues that she was entitled to a jury instruction that the shooting of her husband Doug could have been an accident. Because the trial court refused to allow this, Verina alleges that the verdict must be reversed and the case remanded for a new trial. In reviewing the trial court's grant or denial of jury instructions, this Court considers jury instructions "as a whole 'to determine if the jury was properly instructed,' giving abuse-of-discretion deference to the trial judge's decision." *Clayton v. State*, 106 So. 3d 802, 804 (Miss. 2012) (citing *Flowers v. State*, 51 So. 3d 911, 912 (Miss. 2010)).

¶13.   Jury Instruction D-9, which was refused, read:

> The Court instructs the jury that "accidental death" and "murder" are mutually-exclusive terms. An accidental death cannot be the result of a deliberate design to kill. Likewise, a deliberate design to kill cannot produce an accidental death.

> Therefore, if, after reviewing the evidence as a whole, you find that Douglas Childs could have died as the result of an unintentional hunting accident–whether caused by the Defendant or by any known or unknown party–you must return a verdict of NOT GUILTY.

The State objected to this instruction because, it argued, no evidence had been presented that this was an accident. No one had testified that he or she accidentally had discharged a firearm; no testimony was presented regarding an accident; and this Court has held that there must be a basis in the evidence before an instruction on accidental death may be given. *Montana v. State*, 822 So. 2d 954, 962-63 (Miss. 2002). Further, the State argues that this specific instruction presumes facts not in evidence.

¶14. In response, Verina argues that the whole case lacked evidence and that there was no evidence as to whether or not an accidental shooting occurred.

¶15. We find that the trial court did not abuse its discretion in denying a jury instruction based on the fact that there was no evidence to support an accident.

### III. The State failed to prove deliberate-design murder.

¶16. Verina argues that the elements of deliberate-design murder were not met and could not have been met in this circumstantial-evidence case. Deliberate-design murder involves three elements: the defendant killed the victim without authority of law and with deliberate design to effect his death. *See* Miss. Code Ann. 97-3-19 (Rev. 2006); *Parker v. State*, 30 So. 3d 1222, 1231 (Miss. 2010). This Court has held that "[i]n circumstantial-evidence cases, the state is required to prove the accused's guilt not only beyond a reasonable doubt, but to the exclusion of every other hypothesis consistent with innocence." *Thomas v. State*, 42 So. 3d 528, 539 (Miss. 2010). Verina argues that there is not enough evidence to meet the

6

standard for deliberate-design murder, since the only evidence is circumstantial. Further, Verina argues, the State never proved that the shooting was anything more than an accident.

¶17.    The State argues that "deliberate design, as a matter of law, may be inferred through the intentional use of any instrument which based on its manner of use, is calculated to produce death or serious bodily injury." *Wilson v. State*, 936 So. 2d 357, 364 (Miss. 2006) citing *Jones v. State*, 710 So. 2d 870, 877 (Miss. 1998). Thus, the State asserts that the use of a high-powered rifle was sufficient to supply the necessary ingredient of deliberate design.

¶18.    We agree. The jury, as the fact-finder, convicted Verina of deliberate-design murder. Because circumstantial evidence alone is enough and allowable, we find no merit in this assertion of error.

## CONCLUSION

¶19.    We find no error in the trial court's conviction of Verina Childs. Her due-process rights were not violated; she offered no evidence to support an accident theory for jury instructions; and the State proved deliberate-design murder, albeit by circumstantial evidence. Accordingly, we affirm the conviction and sentence of the Oktibbeha County Circuit Court.

¶20.    **CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED**.

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER AND COLEMAN, JJ., CONCUR. KING, J., CONCURS IN RESULT ONLY.**