GREENLEE, J., FOR THE COURT:
¶ 1. James Edward Pryor challenges his conviction for driving a vehicle while under the influence of an impairing substance at an aggravated level (DUI).
¶ 2. The Jones County Circuit Court sentenced him to twenty-one years with four years suspended, with seventeen years to serve in the custody of the Mississippi Department of Corrections, followed by four years of post-release supervision. Pryor moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The court denied his motion, and Pryor appeals.
¶ 3. He alleges that: (1) evidence was insufficient to support the guilty verdict; (2) the jury was not properly instructed on the elements of aggravated DUI; (3) the circuit court erred when it allowed an accident reconstructionist to testify; (4) his ineffective-assistance-of-counsel claim should be preserved; and (5) the circuit court erred when it denied his motion to suppress evidence. We affirm the circuit court's judgment.
*1235 FACTS AND PROCEDURAL HISTORY
¶ 4. On a summer evening in 2013, a nurse was driving home from work when she noticed a black truck hurriedly approaching her from behind. Concerned by the driver's erratic behavior, she cautiously slowed, allowing the black truck to pass.
¶ 5. The black truck then swerved and rear-ended the tan truck driving ahead of the nurse. The collision pushed the tan truck off the road where it rolled several times and pinned one of its passengers beneath it. The nurse pulled over and called 911.
¶ 6. The black truck stopped, and its driver, Pryor, emerged. The nurse asked him to sit or lie down until help came, but he refused and repeatedly walked back and forth to his truck.
¶ 7. A patrolman with the Mississippi Department of Public Safety soon arrived and spoke with Pryor. He saw Pryor's staggered walk, heard his slurred speech, and smelled his breath. Pryor told him that he drank alcohol that day and did not remember the accident. The patrolman took Pryor to a nearby hospital, where a warrant permitted Pryor's blood to be drawn several hours later. The blood sample was sent to a crime lab.
¶ 8. Later, another patrolman measured and documented the debris. This patrolman also served as an accident reconstructionist. He reviewed photographs, took notes, and wrote a report. He later testified at trial as an expert.
¶ 9. Over the next several months, the crime lab tested Pryor's blood, and the pinned passenger underwent eight surgeries. The blood sample tested positively for both alcohol and methamphetamine. At the time of trial, the injured passenger-bedridden for nearly a year-could no longer work at his former construction job and struggled to work as a motel housekeeper once a week.
¶ 10. In March 2017, a jury found Pryor guilty of an aggravated DUI offense. The circuit court sentenced him to twenty-one years with four years suspended, with seventeen years to serve, followed by four years of post-release supervision. Pryor then moved for a JNOV or, in the alternative, a new trial, which the circuit court denied. He appeals.
DISCUSSION
I. Was evidence sufficient to support the guilty verdict?
¶ 11. To determine whether evidence is sufficient to sustain a conviction in Mississippi, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown v. State , 217 So.3d 805, 807 (¶ 5) (Miss. Ct. App. 2017) (citing Jackson v. Virginia , 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). An aggravated DUI conviction in Mississippi stems from the following:
It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; (b) is under the influence of any other substance which has impaired such person's ability to operate a motor vehicle; ... [or] (d) is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law ....
Miss. Code Ann. § 63-11-30(1) (Rev. 2012). It further requires that:
Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another or mutilates, disfigures, permanently *1236 disables or destroys the tongue, eye, lip, nose or any other limb, organ or member of another ....
Miss. Code Ann. § 63-11-30(5) (Rev. 2012).
¶ 12. Pryor does not dispute that evidence was sufficient to find that he negligently caused permanent disability to the tan truck's pinned passenger. That victim underwent eight surgeries and still cannot return to his former occupation. He can barely work as a motel housekeeper once a week.
¶ 13. It is the element contained in subsection (1) with which Pryor quarrels. He asserts that the jury did not indicate whether it based its verdict on the intoxicant being the L-isomer or the D-isomer of methamphetamine, asserting one of those intoxicants-L-isomer-cannot cause impairment. Therefore, he reasons that the State did not prove the element of impairment beyond a reasonable doubt.
¶ 14. Testimonial evidence indicates Pryor drove erratically-a clear sign of impairment. A patrolman noticed other obvious signs, including staggered walk, slurred speech, and odorous breath. Pryor even admitted to drinking and stated that he did not remember the accident. Also, the nurse testified about her observations of Pryor's driving, the wreck itself, and Pryor's behavior on the roadside. Understandably, Pryor declines to address this testimonial evidence in his argument.
¶ 15. On the other hand, the jury did not specify upon which intoxicant it based its verdict, nor was it instructed to do so. However, we presume that jurors follow the court's instructions. Stubbs v. State , 878 So.2d 130, 137 (¶ 19) (Miss. Ct. App. 2004). And we will not reverse the verdict for "mere want of form, so long as the jury's intent can be understood in a reasonably clear manner." Campbell v. State , 164 So.3d 519, 521 (¶ 6) (Miss. Ct. App. 2015) (internal quotation marks omitted) (quoting Jordan v. State , 912 So.2d 800, 814 (¶ 35) (Miss. 2005) ).
¶ 16. We note that the jury was instructed on the charge of aggravated DUI.[1] The instruction tracked the indictment and the statute, and as the jury had sufficient evidence to find that Pryor was under the influence of intoxicating liquor or methamphetamine that impaired his ability to operate a motor vehicle, the jury did not have to find that a specific isomer was present.
¶ 17. In fact, the statute even states that one can be convicted if he is under the influence of "any other substance," not just liquor or controlled substances, such as methamphetamine. Indeed, this court has upheld a verdict under that statute in which the defendant was found impaired by anxiety medication. Roberts v. State , 229 So.3d 1060, 1068 (¶ 28) (Miss. Ct. App. 2017).
¶ 18. Considering the evidence in the light most favorable to the State, a rational trier of fact could have found Pryor guilty of the charge of aggravated DUI. Therefore, we find sufficient evidence exists to support the verdict. Thus, the circuit court properly denied Pryor's motion for a JNOV.
II. Was the jury properly instructed on the elements of aggravated DUI?
¶ 19. Pryor did not object to the jury instructions on the charge of aggravated DUI at trial. This failure results in a procedural bar on appeal "unless it amounts to plain error." Berry v. State , 728 So.2d 568, 571 (¶ 6) (Miss. 1999) (citing Sanders v. State , 678 So.2d 663, 670 (Miss. 1996) ).
*1237 ¶ 20. The plain error doctrine requires that error exists and that the error "resulted in a manifest miscarriage of justice." Walters v. State , 206 So.3d 524, 530 (¶ 16) (Miss. 2016) (quoting Williams v. State , 794 So.2d 181, 187 (¶ 23) (Miss. 2001) ). For it to apply, we must find that (1) the circuit court deviated from a legal rule, (2) "the error is plain, clear, or obvious," and (3) the error "prejudiced the outcome of the trial." Id. (quoting McGee v. State , 953 So.2d 211, 215 (¶ 8) (Miss. 2007) ).
¶ 21. The circuit court gave Instruction D-4A, which provided:
If you find from the evidence in this case beyond a reasonable doubt that:
1. The indictment in this case occurred on or about the 29th day of June, 2013, in the First Judicial District of Jones County, Mississippi,
2. James Edward Pryor drove or operating a motor vehicle; and
3. negligently caused an accident which resulted in the mutilation or disfigurement to Jaime Mendez's leg by crashing his motor vehicle into the rear of the motor vehicle in which Jaime Mendez was a passenger; and
4. at the time, James Edward Pryor was driving or operating the defendant's vehicle under the influence of methamphetamine and/or alcohol or combination thereof which impaired his ability to drive;
then you shall find the defendant guilty as charged.
If the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find James Edward Pryor not guilty.
¶ 22. This instruction aligns with essential elements of an aggravated DUI conviction under section 63-11-30(5), which we stated before.[2]
¶ 23. But Pryor does not insist that the circuit court gave the wrong instructions; rather, he asserts that the circuit court erred in not further defining the terms "mutilation" or "disfigurement" for the jury. He contends that these terms are ones of art and because the circuit court did not instruct the jury as to their precise legal meanings, the circuit court did not give proper instructions.
¶ 24. However, we find that even without the circuit court giving some specialized meaning to the terms "mutilation" or "disfigurement," the jury could reasonably concur that the terms applied to Pryor's case based on the presented evidence. This alleged failure did not prejudice the trial's outcome. Again, the circuit court properly denied Pryor's posttrial motion.
III. Did the circuit court err when it allowed the accident reconstructionist to testify?
¶ 25. We must first determine if Pryor's claim is procedurally alive. We find that it is not. He did not object to the accident reconstructionist's testimony at trial. This failure results in a procedural bar on appeal. Tate v. State , 912 So.2d 919, 928 (¶ 27) (Miss. 2005) (citing Wilcher v. State , 479 So.2d 710, 712 (Miss. 1985) ).
¶ 26. Notwithstanding that bar, we find it, at best, could only be harmless error. Pryor asserts that the circuit court's failure to tender the accident reconstructionist as an expert witness should have resulted in his inability to testify. But even without the expert testimony, the jury could have determined the accident's specifics based on other testimonial evidence. This issue is without merit.
*1238 IV. Should we preserve Pryor's ineffective-assistance-of-counsel claim?
¶ 27. Pryor asks this court-in a footnote under the section that details the accident reconstructionist's testimony-that "the issue of ineffective assistance of counsel be preserved." Because his attorney failed to object at trial to the accident reconstructionist's testimony, Pryor asks this court to preserve his ineffective-assistance-of-counsel issue for review on a postconviction relief proceeding, despite the procedural bars already discussed.
¶ 28. This request is appropriate. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during [postconviction] proceedings." Dartez v. State , 177 So.3d 420, 422-23 (¶ 18) (Miss. 2015) (citing Archer v. State , 986 So.2d 951, 955 (¶¶ 15-16) (Miss. 2008) ). The supreme court has explained that
[a]n appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately. In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for [postconviction] relief (PCR).
Id. at 423 (¶ 18) (citation omitted). Here, the record on appeal is insufficient to review the claim. Thus, Pryor may seek the Mississippi Supreme Court's leave to raise this claim in a PCR motion. See Miss. Code Ann. § 99-39-7 (Rev. 2015).
V. Did the circuit court err when it denied Pryor's motion to suppress evidence?
¶ 29. In determining whether a circuit court erred in denying a motion to suppress evidence, we apply an abuse-of-discretion standard. Mariner Health Care Inc. v. Estate of Edwards ex rel. Turner , 964 So.2d 1138, 1149 (¶ 25) (Miss. 2007) (citing Whitten v. Cox , 799 So.2d 1, 13 (¶ 27) (Miss. 2000) ). Under this standard, we will affirm the circuit court's decision unless there is a definite and firm conviction that it committed a clear error of judgment in the conclusion it reached upon weighing relevant factors. Plaxico v. Michael , 735 So.2d 1036, 1039 (¶ 11) (Miss. 1999) (citing Cooper v. State Farm Fire & Cas. Co. , 568 So.2d 687, 692 (Miss. 1990) ).
¶ 30. Pryor asserts that the circuit court erred in its denial because: (1) the court neither accounted for federal regulations that exempt Schedule II controlled substances nor considered Mississippi caselaw that allegedly exempts L-isomer produced by Vicks VapoInhalers; and (2) the State acted in bad faith when it allowed the lab to destroy Pryor's blood sample.
¶ 31. Pryor relies on Crosswhite v. State , 732 So.2d 856 (Miss. 1998), in his assertion that our caselaw exempts L-isomer methamphetamine in Vicks VapoInhalers. But he misses an important distinction: The court in Crosswhite acknowledged that L-isomer methamphetamine, when contained in Vicks VapoInhalers, is exempted from the controlled substances list. Id. at 859 (¶ 7). However, Crosswhite held that when the methamphetamine was reduced from its presence in the Vicks VapoInhalers into another form, the L-isomer of methamphetamine is not exempted from the controlled substances list. Id. at 860 (¶ 10). Here, Pryor had no Vicks VapoInhalers in his possession.
¶ 32. Thus, we find that the circuit court appropriately reviewed the applicable statute and applicable caselaw. It determined that there is no differentiation between L-isomer and D-isomer of methamphetamine when considering the statute upon which the conviction is based. We agree.
*1239 ¶ 33. Pryor also asserts that the State acted in bad faith when it allowed the lab to destroy his blood sample. But we find that the circuit court appropriately applied Childs v. State , 133 So.3d 348, 349-51 (¶¶ 10-11) (Miss. 2013). The circuit court determined that it was not "clear that [Pryor's blood sample] had exculpatory value at the time the report was rendered in the six months notice was given." The State even admitted that it did not know about the isomeric differentiation, and, if it did, then it would have tested his blood sample further. We also see no differentiation in whether the methamphetamine was one isomer or another or both as the crime on which the verdict was based merely requires that a substance has impaired his ability to drive. We affirm the circuit court's judgment.
CONCLUSION
¶ 34. We find that the evidence was sufficient to support the guilty verdict, the jury was properly instructed on the elements of the charge of aggravated DUI, the circuit court did not err when it allowed an accident reconstructionist to testify, and the circuit court did not err when it denied his motion to suppress evidence. We do, however, preserve his ineffective-assistance-of-counsel claim. Thus, we affirm the circuit court's judgment.
¶ 35. AFFIRMED.
LEE, C.J., IRVING, P.J., CARLTON, FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR. GRIFFIS, P.J., AND WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.

See infra ¶ 21.

See supra ¶ 11.