# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00351-COA

**MICHAEL LONG A/K/A MICHAEL T. LONG**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT: 07/20/2022
TRIAL JUDGE: HON. CLAIBORNE McDONALD
COURT FROM WHICH APPEALED: LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: JIM L. DAVIS III
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: PARKER ALAN PROCTOR JR.
DISTRICT ATTORNEY: HALDON J. KITTRELL
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 10/01/2024
MOTION FOR REHEARING FILED:

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. Michael Long appeals from his conviction and sentence in the Lamar County Circuit Court of possession of a controlled substance with the intent to distribute. Following trial, the circuit court sentenced Long as a second subsequent offender and a habitual offender to serve fifteen years in custody without eligibility for parole. On appeal, Long raises the issues of a *Batson* violation, sufficiency of the evidence, spoliation of evidence, and ineffective assistance of counsel. After a review of the record, we affirm Long's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 18, 2019, Officer John Brown was traveling north on Highway 589 in Lamar County, Mississippi. Officer Brown observed a tan Chevrolet S-10 pickup truck swerving in the roadway, and it swerved off the road to the right side, catching his attention. Officer Brown ran the tag, and it came back registered to a "F.D. or Phyllis Roberson, with an expiration date of 2017." After running the tag through dispatch, Officer Brown activated his blue lights while following behind the tan S-10, attempting to stop the vehicle. The pickup truck initially pulled over to the right side of the road, and Officer Brown followed behind him to conduct a traffic stop. As Officer Brown positioned his vehicle behind the pickup truck off the side of the road, the truck pulled back out onto the highway, still going northbound. After re-entering the road, Officer Brown then initiated his audible siren, along with the blue lights. The pickup truck did not stop again until a little over a mile after the initial merge off the road.

¶3.     Once the tan S-10 finally came to a stop, Officer Brown exited his vehicle and began approaching the truck. At the same time, Long quickly exited the truck, and Officer Brown observed a pocketknife fall to the ground. For his safety, Officer Brown ordered Long to the rear of the truck and conducted a quick pat-down search. Officer Brown observed that Long appeared to be agitated and very excited. Long would not engage in conversation and kept his body posture turned toward the driver's side door of the vehicle. Officer Brown asked Long why he did not stop sooner, and Long made comments claiming he had nowhere to pullover. Officer Brown responded that Long initially began to stop but then pulled off and kept going. Officer Brown then obtained verbal consent from Long to search the vehicle, but

2

before he began the search, Deputy Zachary Ruple arrived at the scene with his drug-sniffing canine.

¶4.     Instead of acting on the verbal consent, Officer Brown requested Deputy Ruple to use the canine to conduct an "open air-sniff" around the exterior of the truck. The canine showed a positive alert for drugs near the passenger side door, so Officer Brown deemed a search of the vehicle was warranted. By this point, Deputy Jason Pohlman and Investigator Scott Wagner had also arrived on the scene. Deputy Pohlman searched the driver's side of the pickup truck, while Investigator Wagner searched the passenger side. During this time, Officer Brown was writing Long citations for an expired tag and expired driver's license.

¶5.     While searching the front passenger side, Investigator Wagner found a digital scale and a black zipper-style bag that had individual sandwich bags inside it. Investigator Wagner stated the black bag was unzipped, sitting on the seat, and could be immediately seen without opening the door. Investigator Wagner noticed that the scale had what appeared to be a crystalized residue on it, which from his training and experience gave him reason to believe it was crystal methamphetamine residue on the scale. On the driver's side of the truck, Deputy Pohlman located a black Wiley X sunglass case in the rear door panel that contained a glass pipe commonly used for smoking methamphetamine, and he found a clear plastic bag with 14.83 grams of a crystal-like substance inside it. Adrian Hall, a forensic scientist from the Mississippi Forensics Laboratory, verified that the 14.83 grams of crystal substance found in the truck Long was driving was in fact methamphetamine. Officer Brown, Investigator Wagner, and Deputy Pohlman all testified that the S-10 pickup truck was a very small truck,

3

and Officer Brown and Deputy Pohlman confirmed that Long could have touched the methamphetamine and paraphernalia within the truck by merely reaching out.

¶6. Once Investigator Wagner and Deputy Pohlman concluded their search, Officer Brown placed Long under arrest for the items that were discovered during the search. Long was charged with possession of a controlled substance with the intent to distribute. The charge included intent to distribute, not just possession, because of the amount of methamphetamine that was found as well as the paraphernalia items that were discovered.

¶7. On October 8, 2019, the grand jury indicted Long as a habitual offender for possession of a controlled substance with the intent to distribute. The indictment was later amended to allege that Long was a second subsequent drug offender and therefore subject to enhanced penalties. *See* Miss. Code Ann. § 41-29-147 (Rev. 2018). Following the indictment, Long had a suppression hearing regarding the evidence that was obtained during the traffic stop. At the hearing, the motion to suppress was ultimately denied. The case then proceeded to trial.

¶8. Before trial began, the court started the voir dire process to select the jury. The court explained the duties of the jury to the potential members and asked questions to make sure a fair and impartial jury would be empaneled. The State then conducted its voir dire inquiries, followed by the defense's voir dire inquiries. The lawyers for the State and for Long each asked questions to determine if the potential jurors knew anyone involved in the case, had any biases regarding any persons or matters in the case, or if there was any reason they should not be involved in this case. The court struck three members for cause.

¶9.     Once voir dire concluded, an in-chambers jury selection began. The State and the defense were each granted six peremptory challenges. They were also both granted one additional strike on the alternates. The State used five of its peremptory challenges as well as its one permitted strike on the alternates. The State struck juror one, juror eight, juror nine, juror nineteen, juror twenty, and juror twenty-four. All six of these jurors were white. The defense used five of its peremptory strikes and chose not to use its additional alternate strike. The defense struck juror three, juror five, juror thirteen, juror fifteen, and juror seventeen. Three of these five jurors that the defense struck were black.

¶10.    During the in-chambers jury selection, when either side would raise a peremptory challenge, the attorneys did not give an explanation for the strike, nor did the court or opposing counsel inquire further as to why they were asserting the strike. Further, no statements were made regarding any of the removed jurors' race or requests for a race-neutral explanation during the in-chambers selection.

¶11.    At trial, the State brought Officer Brown, Investigator Wagner, and Deputy Pohlman in to testify about their encounters with Long on the day of the arrest. The State also brought in forensic scientist Hall to testify about the nature of the crystalize substance that was found in the vehicle. After the State rested, Long moved for a directed verdict alleging that the State had nothing to prove beyond a reasonable doubt that he possessed methamphetamine with the intent to distribute. Long also argued that the State did not even meet its burden to prove he committed the lesser-included offense of possession of a controlled substance. However, the State argued that the proof established Long had constructive possession of the

5

methamphetamine found and the intent to sell the methamphetamine because of the quantity of drugs found along with "the baggies and scales, which are commonly used to repackage and sell." The court denied Long's motion for a directed verdict and held that "fair-minded people in exercise of impartial judgment could find the defendant guilty on each of the elements of the offense beyond a reasonable doubt." Long rested without putting on any testimony.

¶12. The jury subsequently convicted Long of possession of a controlled substance with the intent to distribute. Long filed a motion for a new trial or, in the alternative, judgment notwithstanding the verdict (JNOV). The hearing began on October 21, 2022, but was continued until February 17, 2023, to allow the State time to identify persons on jailhouse phone calls that had been submitted for the motion hearing in October. This post-trial JNOV motion was denied. Before this Court, Long raises the issues of a *Batson* violation, the denial of a directed verdict/JNOV, the denial of a dismissal of charges or, in the alternative, a spoliation jury instruction, and ineffective assistance of counsel.

**STANDARD OF REVIEW**

¶13. This Court will not overrule a trial court's *Batson* ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence. *Miles v. State*, 346 So. 3d 840, 842 (¶5) (Miss. 2022). "[T]he standard of review is de novo when the issue is one of law and not of fact." *Forrest Gen. Hosp. v. Humphrey*, 136 So. 3d 468 (¶14) (Miss. Ct. App. 2014). The denial of a motion for a directed verdict or judgment notwithstanding the verdict (JNOV) challenging the legal sufficiency of the evidence is

reviewed de novo. *Williams v. State*, 334 So. 3d 68, 72-73 (¶4) (Miss. 2022). We also review whether a defendant has received ineffective assistance of counsel under a de novo standard because it is a question of law. *Taylor v. State*, 167 So. 3d 1143, 1146 (¶5) (Miss. 2015). We review the rulings on jury instructions here under an abuse-of-discretion standard. *Roby v. State*, 183 So. 3d 857, 872 (¶63) (Miss. 2016).

## DISCUSSION

### I.  *Batson* Challenge

¶14.    Long argues a *Batson* violation occurred when his trial counsel struck three black jurors. *See Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986). This argument is procedurally barred because he did not raise this issue at trial. The Mississippi Supreme Court has held that "[w]hen a defendant fails to raise a *Batson* challenge at trial, he or she is procedurally barred from doing so on direct appeal." *Lofton v. State*, 248 So. 3d 798, 812 (¶52) (Miss. 2018).

¶15.    In *Lofton*, a similar issue arose when "[d]uring voir dire, [the defendant] used *his own* peremptory challenges to strike all African-American jurors on the panel." *Id.* at (¶51) (emphasis added). The defendant did not raise any *Batson* challenges at any point during voir dire or during trial. *Id.* at (¶52). In *Lofton*, our supreme court held that he was procedurally barred from bringing this issue, but if it were to be viewed on the merits, it would not succeed because he could not "claim error about a perceived problem he created." *Id.*

¶16.    Notwithstanding the procedural bar on this issue, Long's claim is without merit.

Again, this Court applies a highly deferential standard of review to a trial court's *Batson* rulings. *Miles*, 346 So. 3d at 842 (¶5). We follow the standard set by the United States Supreme Court, which states that "a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). Great deference is given to a trial court's finding of whether a peremptory challenge was race-neutral "because finding that a striking party engaged in discrimination is largely a factual finding." *H.A.S. Elec. Contractors Inc. v. Hemphill Const. Co.*, 232 So. 3d 117, 123 (¶15) (Miss. 2016) (citing *Berry v. State*, 802 So. 2d 1033, 1038 (¶14) (Miss. 2001)).

¶17.    Long, a white male, contends that the State and the trial court had the responsibility to raise the issue of a *Batson* violation at trial and failed to do. However, there is no requirement that the State and trial court must "of their own accord, uncover and resolve all facts and circumstances that may bear on whether a peremptory strike was racially motivated when the strike's challenger has not identified those facts and circumstances." *Clark v. State*, 343 So. 3d 943, 962 (¶55) (Miss. 2022). Long's only support is a comparative juror analysis, which he did not present to the trial court or anytime prior to appeal. On this issue, the Mississippi Supreme Court has held that unless extraordinary facts of the case exist, "rebuttal evidence and arguments not presented to the trial court will not be considered on appeal." *Id*. at 961 (¶54). Our supreme court agreed with the Fifth Circuit and explained: "[t]here is no established requirement that a trial court must conduct a comparative juror analysis when one is not requested, and there is no requirement that a reviewing court must conduct one for the first time on appeal." *Id*. at 962 (¶56) (citing *Chamberlin v. Fisher*, 885 F.3d 832, 840

8

(5th Cir. 2018)).

¶18. Thus, Long's argument that his trial counsel committed a *Batson* violation is both procedurally barred and without merit.

## II. Directed Verdict and Post-Trial Motions

¶19. Long's next argument is that the trial court erred in not granting his motion for a directed verdict. In his motion to the trial court, Long asserted that the State did not prove beyond a reasonable doubt that he possessed methamphetamine with the intent to distribute. He also argued that the State did not even meet its burden to prove beyond a reasonable doubt the lesser-included offense of possession of a controlled substance.

¶20. "To establish possession of a controlled substance, the State must produce evidence that a defendant (1) was aware of the presence of a substance, (2) was aware of the character of the substance, and (3) was consciously and intentionally in possession of the substance." *Williams*, 334 So. 3d at 73 (¶5). Long asserted that the State did not have evidence to establish that he was aware of the nature and existence of the controlled substance and that he had conscious control over it, they merely argued proximity. During Long's hearing on the motion for a new trial or JNOV, he testified that the truck he was driving when he was pulled over did not actually belong to him and that he was borrowing it from someone he worked with. It was not until after his initial trial that he learned the truck belonged to a woman named Meaghan Holsen.

¶21. The State countered Long's assertion that the State did not prove its case beyond a reasonable doubt, stating "that proximity is evidence of constructive possession, along with

9

evidence of paraphernalia items having to do with methamphetamine laying out in the open beside the driver of this vehicle, Michael Long." "To establish constructive possession, the drug simply has to be found near the defendant 'in a place over which the defendant exercises dominion or control.'" *Fontenot v. State*, 110 So. 3d 800, 804 (¶9) (Miss. Ct. App. 2012) (quoting *Glidden v. State,* 74 So. 3d 342, 348 (¶20) (Miss. 2011)).

¶22.   The State also provided evidence that Long was aware of the nature of the substance found, having been convicted for other methamphetamine-related crimes in 2004, 2012, 2016, and 2022, with the 2022 conviction also including an intent to resell.  The State further argued that it had proved Long had the methamphetamine "in his possession or under his conscious control under his dominion and control through the testimony of law enforcement officers as to where they located the methamphetamine."

¶23.   Lastly, the State argued it had "proven constructive possession of the methamphetamine, as well as the intent to sell the methamphetamine, given the amount being more than personal use, the baggies and scales, which are commonly used to repackage and sell." Officer Brown testified that Long was charged with intent to distribute because of the amount of methamphetamine that was found and the paraphernalia items that were located. When the State questioned Officer Brown as to whether 14 grams is more than personal use amount, Long objected and the court sustained this objection stating that "the jury can decide whether or not it's personal use." The trial court denied the relief requested, finding "that a review of the evidence reveals that it is of such quality and weight that a reasonable fair-minded people in exercise of impartial judgment could find the defendant guilty on each of

the elements of the offense beyond a reasonable doubt."

¶24. In Long's brief, he alleges that the methamphetamine was not within his reach or domain and control; however, multiple officers who were on the scene and conducted the investigation of the truck testified during trial that the truck was very small and that someone could touch the back wall of the vehicle from the front seat. Officer Brown and Deputy Pohlman both testified specifically that someone sitting in the driver seat would be able to reach out and put his or her hands where the crystal-like substance was found. The crystalized substance was confirmed by the Mississippi Forensics Laboratory to be 14.83 grams of methamphetamine. Further, Long was the only one in the vehicle and the one who had control over the vehicle at the time of his arrest.

¶25. Investigator Wagner testified that on the passenger side of the vehicle sitting on the seat there was a black-zipper bag that was visible from plain-view without even opening the truck door. Inside of this bag, Investigator Wagner located a digital scale and individual sandwich bags, all of which had a residue of a crystalized substance. Investigator Wagner also testified that the sandwich bags he located are commonly used for "prepackaging illegal narcotics." When the forensic scientist Hall testified at trial, he informed the court that he only was given the crystalized substance to conducting testing on, not any of the paraphernalia; however, he went on to say that when the substance itself had been tested and was proved to be methamphetamine, it is not common practice for them to test the paraphernalia that was found unless the paraphernalia is the only evidence in the case.

¶26. In this instance, we find that the trial court did not err in denying Long's requests for

11

a directed verdict or JNOV considering all the evidence that was presented to the court. There is sufficient evidence to prove that Long was in constructive possession of the methamphetamine due to the location of the substance and paraphernalia as well as the accessibility to it all from the driver seat where Long was. Even though there was testimony that the truck did not belong to Long, the evidence proved Long had dominion or control over the methamphetamine because he was the only person in the vehicle at the time. Further, because of his prior charges relating to methamphetamine it can be concluded that Long was aware of the nature of the substance that was located in the truck. Also regarding Long's prior convictions, combined with the amount of methamphetamine that was found, the jury had enough information to determine whether Long had an intent to distribute. Therefore, we find that the trial court did not err in denying Long's requests for a directed verdict or JNOV because a rational jury could find beyond a reasonable doubt that Long was in constructive possession of the methamphetamine. *See Williams*, 334 So. 3d at 75 (¶11).

### III. Missing Photographs

¶27. The next issue Long presents regards missing photographs law enforcement took of the truck and the scene of the arrest. Long argues that because of the missing photographs, his charges should have been dismissed, or the court alternatively should have given a spoliation jury instruction. However, Long did not bring the issue before the trial court anytime before appeal. "Failure to raise an issue at trial bars consideration on an appellate level." *McKnight v. State*, 187 So. 3d 635, 645 (¶24) (Miss. Ct. App. 2015) (quoting *Parisi v. State*, 119 So. 3d 1061, 1066 (¶19) (Miss. Ct. App. 2012)). Thus, he is procedurally barred

12

from raising the issue on appeal now. Further, the Mississippi Supreme Court has held in instances where the defendant "argue[d] that, although not requested by defense counsel, the trial court erred by failing to instruct the jury sua sponte as to the unreliability of eyewitness identifications" that "if an issue or objection was not raised at trial, it is procedurally barred." *Corrothers v. State*, 148 So. 3d 278, 304 (¶59) (Miss. 2014).

¶28.    Notwithstanding the procedural bar, this issue also lacks merit. Long argues that the photographs that were lost were significant evidence for his defense. He alleges in his brief that the photographs would have shown he could not have reached the methamphetamine from where he was sitting. Our supreme court has clarified:

> [T]he following is required in order to find a due process violation by the State in a preservation of evidence case: (1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the prosecution's destruction of the evidence must have been in bad faith.

*State v. McGrone*, 798 So. 2d 519, 523 (¶11) (Miss. 2001). Long cites this case in his brief but includes a portion of the concurring opinion to support his argument, which reads, "[B]ad faith becomes irrelevant when the search for the truth is the task at hand." *Id*. at 524 (¶17) (Mills, J., concurring). But that is not the court's holding in that case. The majority opinion clearly held "that destruction of evidence in bad faith is a requirement for a due process violation based on the State's failure to preserve evidence." *Id*. at 523 (¶13). The majority continued only to add that "[w]here the State's actions absolutely prevent a defendant in a criminal case from presenting proof on this issue, we will consider the requirement of bad faith to have been proven." *Id*.

13

¶29. Long does not satisfy any element of the standard set forth by the Mississippi Supreme Court in *McGrone*. The first prong of the test set forth in *McGrone* is that "the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed." *Id*. at (¶11). In this instance, when the photographs were allegedly taken of the truck Long was driving, it was not apparent that they possessed an exculpatory value. In light of the other physical evidence that the officers found in the truck, the photographs did not possess an apparent exculpatory value.

¶30. The next prong is proving that the defendant could not reasonably obtain any comparable evidence to the evidence that was destroyed. At trial, Officer Brown, Investigator Wagner, and Deputy Pohlman all testified that the truck was very small and that a person could touch the back wall of the vehicle from the front seat. Officer Brown and Deputy Pohlman testified, specifically, that someone sitting in the driver's seat would be able to reach out and put his hands where the crystal-like substance was found. All their testimony served the purpose of evidence to show that Long could in fact reach the back door panel where the methamphetamine was found.

¶31. Further, the truck was not destroyed, and nothing was presented at trial to suggest that Long could not have obtained pictures of the truck he was driving. Long had the opportunity to present his own witnesses to testify at trial or provide the court with pictures of that exact truck or pictures of the same make and model to demonstrate the size of the truck, yet he chose not to do any of these things. Nothing in the record suggests that the State's actions absolutely prevented Long from presenting proof on the issue.

¶32. Lastly, and most importantly, to satisfy the standard set forth in *McGrone*, there needs to be a showing that the destruction of the evidence was done in bad faith. Bad faith is defined as "not simply bad judgment or negligence, but rather conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." *Murray v. State*, 849 So. 2d 1281, 1286 (¶19) (Miss. 2003) (quoting Black's Law Dictionary 139 (6th ed. 1990)).

¶33. Here, Officer Brown testified that in his practice, when he takes photos of a crime scene, he uses the police department's cell phone. He further testified that the photos missing were a result of the police department getting new cell phones. When the department received new phones, the information and photographs were erased on the old ones before they were replaced. Officer Brown testified that all this occurred before he downloaded the photographs to the department's system. Officer Brown admitted this was all an oversight on his part. This action would more likely be found as bad judgment or negligence, which does not constitute bad faith. There is no proof or reason to infer that the photographs went missing consciously because of a dishonest purpose of moral obliquity.

¶34. Thus, because Long's allegations that the missing photographs warranted a dismissal of his charges or a spoilation jury instruction were not brought anytime prior to appeal and also do not satisfy the standard set forth by our supreme court, the issue is procedurally barred and without merit.

### IV. Ineffective Assistance of Counsel

¶35. Lastly, Long argues that his trial counsel rendered an ineffective assistance of counsel. He claims his trial counsel (1) violated *Batson*, (2) should have moved to dismiss the case due to the missing photographs, and (3) should have offered a spoilation jury instruction.

¶36. "It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal . . . because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim." *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002). Thus, we typically review ineffective assistance of counsel claims on direct appeal when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)).

¶37. If "neither party stipulates to the record's adequacy on this point, we must determine whether the record affirmatively shows ineffectiveness of constitutional dimensions." *Payne v. State*, 282 So. 3d 432, 439 (¶22) (Miss. Ct. App. 2019) (citing *Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017)). We will also resolve ineffective assistance of counsel claims on direct appeal when the record affirmatively shows that the claims are without merit. *Welch v. State*, 361 So. 3d 1278, 1281 (¶13) (Miss. 2023) (quoting *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (citing *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss. 2017); M.R.A.P. 22)). But we

16

may only consider "an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." *Dartez v. State*, 177 So. 3d 420, 423 (¶18) (Miss. 2015). If an ineffective assistance claim is raised on direct appeal, and we find the record is incomplete, "the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction [collateral] relief (PCR)." *Id*.

¶38. In this issue at hand, the State and Long do not stipulate that the record is complete. The State actually explicitly states that it *does not* stipulate that the record is adequate for this Court to review Long's ineffective assistance of counsel claim. Further, we do not find the record affirmatively shows ineffectiveness of constitutional dimensions or lack of merit. Therefore, we decline to address this issue, and Long may instead pursue the claim in a properly filed PCR motion.

## CONCLUSION

¶39. Long's *Batson* claim and his claim that his case should have been dismissed, or that a spoliation jury instruction should have been given, are procedurally barred. Notwithstanding the procedural bars, the arguments lack merit. We find the trial court did not err by denying Long's requests for judgment notwithstanding the verdict. Finally, Long's ineffective assistance of counsel claim will not be addressed by our Court and, instead, may be pursued in a PCR motion. Accordingly, we affirm Long's conviction and sentence.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. WILSON, P.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**