# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00766-COA

**JOSHUA DAY A/K/A JOSHUA HEATH DAY A/K/A JOSHUA H. DAY**　　　　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2018 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MITCHELL DEE THOMAS |
| | JASON AVERY MANGUM |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/14/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.　On August 22, 2017, a Neshoba County grand jury indicted Joshua Day for statutory rape in violation of Mississippi Code Annotated section 97-3-65 (Rev. 2014).　After a one-day trial, the jury found Day guilty.　Day was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC).　In his direct appeal, Day attacks his conviction and sentence, claiming several errors made by the Circuit Court Judge Mark Duncan.　Finding no error, we affirm.

**FACTS**

¶2.    From January 2017 until April 2017, the victim's mother, Betty,[1] lived with Day and his father in Neshoba County, Mississippi. Betty had two biological daughters, namely the victim, Jane, and Jill. Both Jane and Jill lived with their biological father and stepmother in Newton County, Mississippi. Between January and April, Jane and Jill had visitation with Betty every other weekend. The home Betty and Day shared had two bedrooms. During visitation, Jill slept in the second bedroom and Jane slept with her mother and Day in their room. In January 2017, Jane testified that Day began to sexually abuse her while she was sleeping between her mother and Day.

¶3.    According to Jane, the abuse first began in January 2017. At that time, Jane was fourteen years old, and Day was thirty-seven years old. Jane testified that she was lying in bed between her mother and Day when Day reached over and began to touch her "chest" over her clothing. Jane testified that Day touched her in that way on seven different occasions before they had sex. Day would have sex with Jane while she was lying on her side in the bed. This happened between ten and twelve times.

¶4.    Jane discovered she was pregnant after going to her pediatrician for a suspected stomach virus. Jane testified that she was sure Day was the father because she had not had sex with anyone else. At that time, Ralph Sciple was the chief investigator for the Neshoba County Sheriff's Office. Sciple testified that Jane came to the sheriff's office with her biological father and step-mother to speak with him about the alleged abuse. Based on this

---

[1] The identities of the minor child, her mother, and her sister are protected by the use of fictitious names.

meeting and Jane's statement, Day was charged with statutory rape. As part of his investigation, Sciple collected buccal swabs from Day on April 23, 2017.

¶5. Jane was referred to Dr. Virginia Nelson at the Nelson Center for Women, who would handle the care and treatment of Jane's pregnancy. On May 15, 2017, Jane suffered a "fetal demise." In order to conduct chromosome testing, Dr. Nelson performed a Dilation and Curettage Procedure (D&C) on May 19, 2017. Sciple testified that he went to Rush Hospital in Meridian, Mississippi to collect a buccal swab sample from Jane and take custody of the products of conception.[2] Sciple then took the buccal swab he previously collected from Day, the buccal swab from Jane, and the products of conception to Scales Laboratory in Brandon, Mississippi for DNA testing.

¶6. George Schiro, a lab director for Scales Laboratory, testified that he compared the DNA profiles of both Day and Jane from their buccal swabs with the DNA profile from the products of conception. Schiro testified that the comparison revealed that Day could not be excluded as the biological father of the fetus, and in fact, the probability of paternity was 99.99992 percent. At some point thereafter, Scales Laboratory completed its testing and returned all three items of DNA to Sciple. Sciple called the district attorney's office[3] and was told to properly dispose of the products of conception because the Neshoba County

---

[2] At the trial, the DNA expert and Dr. Nelson both referred to the evidence collected from the victim's D&C procedure as "products of conception." The phrase "products of conception" commonly includes the fetus, placenta, and other tissue that results from a D&C procedure. We will describe the DNA evidence that is the subject of this appeal as it was described by the expert and the physician at trial.

[3] The date of this call is unknown as well as whom exactly Sciple spoke to during the call. This will be discussed in length below in the recusal-issue analysis of this opinion.

Sheriff's Office had no way to store biohazardous material.[4]

¶7.    After a one-day trial, the jury returned a verdict of guilty. Day was sentenced to serve twenty-five years in the custody of the MDOC. Day now appeals and presents five separate issues: (1) that Judge Duncan abused his discretion by not recusing himself because he was the district attorney at the time of Day's arrest; (2) that Judge Duncan abused his discretion by allowing the State to ask leading questions during Sciple's testimony; (3) that the State failed to prove the crime occurred on April 1, 2017; (4) that the circuit court erred by allowing DNA evidence to be entered at trial when the samples were destroyed after testing by Scales Laboratory; and (5) that Day was not afforded a fair trial because of testimony regarding offenses that were not set forth in the indictment.

## ANALYSIS

*I.    Whether Judge Duncan was obligated to recuse despite Day not filing
a motion to recuse or otherwise raising the issue on the record.*

¶8.    Day first argues that Judge Duncan abused his discretion by failing to sua sponte recuse himself from the trial. Day claims that Judge Duncan "ordered the destruction of DNA evidence thereby depriving [Day] of his due process right to inspect and analyze said evidence against him." Because of this, Day claims that Judge Duncan took part in his prosecution and should have recused, and an automatic reversal should occur because he did not recuse.

¶9.    The objective test used to determine if a judge should recuse requires that a judge "disqualify himself if a reasonable person, knowing all the circumstances, would harbor

---

[4] The buccal swabs from Day and Jane were not destroyed.

doubts about his impartiality." *McFarland v. State*, 707 So. 2d 166, 180 (¶52) (Miss. 1997) (quoting *Green v. State*, 631 So. 2d 167, 177 (Miss. 1994)). On appeal, a judge's decision to not recuse is reviewed "under the standard of abuse of discretion." *Brent v. State*, 929 So. 2d 952, 955 (¶3) (Miss. Ct. App. 2005) (citing *Steiner v. Steiner*, 788 So. 2d 771, 775 (¶9) (Miss. 2001)).

¶10.    The law of this State demands an automatic reversal of a conviction if the trial judge fails to recuse and previously participated in an adverse role in that case. *Jenkins v. State*, 570 So. 2d 1191, 1191-93 (Miss. 1990); *see Overstreet v. State*, 17 So. 3d 621, 622 (¶1), 614 (¶10) (Miss. Ct. App. 2009). The question for this Court is whether Judge Duncan took a previous adverse role against Day while he was still serving as the district attorney.

¶11.    In *Jenkins*, the Mississippi Supreme Court held that a trial judge, who was serving as a county prosecutor at the time of the defendant's indictment, failed to recuse himself and thereby denied the defendant a fair trial. *Jenkins*, 570 So. 2d at 1193. The defendant had objected and claimed that the judge could not be impartial because he was a prosecuting attorney at the time of his indictment. *Id*. at 1191. The judge did not recuse because "he did not remember [seeing] Jenkins before nor being involved in any preliminary hearings or Grand Jury proceedings." *Id*. The supreme court determined that "a reasonable person knowing that Judge Yeager acted as prosecutor during the indictment of Jenkins would certainly question his impartiality." *Id.* at 1193.

¶12.    In *Overstreet*, there was little doubt that the presiding judge acted in and worked on the case when he was serving as an assistant district attorney at the defendant's plea hearing.

5

*Overstreet*, 17 So. 3d at 623 (¶2). Overstreet filed a motion for post-conviction relief. *Id*. at (¶3). The judge who denied his motion was the former assistant district attorney who had appeared on behalf of the State at his plea hearing. *Id*. at (¶¶2-3). This Court held that the judge "abused his discretion when he failed to recuse himself and ruled on Overstreet's post-conviction relief motion" because the judge had taken an active part in Overstreet's conviction and plea negotiations. *Id*. at 624 (¶¶10-11). In this case, we simply do not know all the facts to automatically reverse pursuant to *Jenkins* and *Overstreet.* A review of the facts proves instructive.

¶13.    Day was charged with the crime of statutory rape, which was alleged to have occurred on or about April 1, 2017. At that time, the district attorney of Neshoba County was Mark Duncan. As part of the sheriff's office investigation, buccal swabs were collected from Day on April 23, 2017, and the victim on May 19, 2017. Also, on May 19, 2017, the sheriff's office collected what was referred to as the "products of conception," after the victim lost the pregnancy due to a miscarriage. All three items were taken to a private, independent laboratory for DNA testing.

¶14.    On or about June 1, 2017, then District Attorney Duncan was apparently appointed by Governor Phil Bryant to serve as the new circuit court judge for Neshoba County. Judge Duncan apparently took office on June 2, 2017. His replacement, Steven Kilgore, was apparently appointed on June 13, 2017.[5] Mark Duncan was the district attorney, for purposes of this case, from the date of the crime, on or about April 1, 2017, to the date he became a

---

[5] The word "apparently" is used since these facts are not in the record on appeal but mentioned in the briefs of the parties, which is not evidence before this Court.

6

judge, on or about June 2, 2017. The record is completely devoid of what part, if any, that

Mark Duncan played in this case during that time frame. By virtue of reading the indictment,

the case was undeniably presented to the grand jury on August 21, 2017. Day's indictment

was returned as a true bill by the grand jury on August 22, 2017, and was signed by District

Attorney Kilgore. The case came before Judge Duncan for trial on March 20, 2018.

¶15.    The briefs tell us that the DNA report was completed by Scales Laboratory on May

30, 2017.[6]  Sciple testified that after the DNA analysis was completed, he called the district

attorney's office. While District Attorney Steven Kilgore was questioning Sciple on direct

examination at trial, he testified as follows:

> Q.    We've got the two samples from [the victim] and Mr. Day. Where's
> the [products of conception]?
>
> A.    It was destroyed because it was human tissue and I did not have
> anywhere to store human tissue for a period of time and **I did contact
> your office** and was advised to go ahead and dispose of it which I took
> it to the Jackson Crime Lab where they do autopsies, and they disposed

---

[6] This date is not in the record on appeal. Day included as a "record excerpt" an affidavit of his attorney in an effort to attach two new "exhibits" that were not part of the record on appeal. Those two new exhibits were the "preliminary DNA analysis" from Scales Laboratory (dated May 30, 2017) and an email from Scales Laboratory to Sciple (dated May 30, 2017, at 2:03 p.m.). The Mississippi Rules of Appellate Procedure unequivocally prohibit appellants from supplementing the record in this way: Rule 30(a) indicates that "[a]ppeals shall be on the record" that are designated in accordance with Rule 10 of the Rules of Appellate Procedure. Rule 10 plainly states that any supplementation of the record must be done "either before or after the record is transmitted to the [Mississippi] Supreme Court or the Court of Appeals, [and] either appellate court **on proper motion** or of its own initiative, **may order** that the omission or misstatement be corrected, and, if necessary, **that a supplemental record be filed.**" M.R.A.P. 10(e) (emphasis added). In other words, parties cannot simply file an affidavit and make some document part of the record without a motion and order. Day's efforts to include documents into the record on appeal without following the rules and then use those documents to argue the judge should have recused himself should not be acceptable practice before this court.

of it for me.

(Emphasis added). This testimony is what Day relies on to argue that Judge Duncan had taken an adversary role while he was district attorney and was actively involved in his prosecution. We disagree. This testimony is the only thing in the record on appeal that Day relies on to argue that Judge Duncan was involved in the prosecution of the case. However, it is clear from reading the transcript that Sciple responded to District Attorney Kilgore's question with "I contacted your office." That would indicate that Sciple was referring to District Attorney Kilgore and not Judge Duncan. While on cross-examination, the defense never questioned Sciple about whom he spoke with, when the call occurred, or when the investigative file was actually delivered to the district attorney's office.

¶16. It is important to note that "who" the district attorney was at the time of that call, exactly when that call was made, when the lab report was received, when the detective went to Jackson, or when the file was delivered to the district attorney's office was never developed by the trial court or the parties. This could be, in part, because the defense failed to file a motion for recusal at trial and the argument was likely not in anyone's minds at the time. There is nothing further in the record to indicate the answers to any of those unresolved but very important and potentially outcome-determinative questions.

¶17. Day relies upon this Court's opinions in *Brent v. State*, 929 So. 2d 952 (Miss. Ct. App. 2005), and *Jenkins v. State*, 570 So. 2d 1191 (Miss. 1990), to argue that Judge Duncan should have recused even if he had no knowledge of Day's case when it came to trial. In *Brent*, a county court judge in Hinds County issued a search warrant that lead to the defendant's arrest

8

and indictment. *Brent*, 929 So. 2d at 955 (¶4). Later, when the judge was appointed to the circuit court, he was set to preside over the defendant's trial for the same crime. *Id*. The judge "stated in the record that [he] had no personal bias or prejudice, remembered no facts concerning the proceedings, and could not even remember Brent from prior encounters." *Id*. Regardless of that pronouncement, this Court found that the judge "committed manifest error in failing to recuse himself." *Id*. at (¶6). The present case is distinguishable. There is no evidence in the record that Judge Duncan did anything from the time of Day's arrest until he took the bench.

¶18. Furthermore, *Jenkins* is not factually similar to the one before this Court. In this case, the record is clear that Judge Duncan was not the district attorney at the time of the indictment, and there is no evidence that Judge Duncan ever participated in prosecuting Day for the limited time he was district attorney when Day was being investigated by the sheriff's department. *Cf. Jenkins*, 570 So. 2d at 1193 (holding that a judge who was actively involved in the defendant's indictment erred by not recusing himself when the case came before him for trial.) The indictment was returned in August 2017 when Judge Duncan was two months removed from his position as district attorney. There are simply not enough facts to determine if Judge Duncan should have automatically recused himself or not. Without proof that Judge Duncan was in a previous adversarial role in this case, the supreme court has indicated that a defendant can waive the issue of judicial recusal, as discussed below.

¶19. This Court and the supreme court have indicated many times that a defendant can waive an objection to the trial judge if there is no motion to recuse or motion to continue

filed or if the defendant never raises the issue at any other point during the trial. *Banana v. State*, 635 So. 2d 851, 854 (Miss. 1994); *see also Rice v. State*, 134 So. 3d 292, 300 (¶23) (Miss. 2014); *Kelly v. State*, 553 So. 2d 517, 521 (Miss. 1989); and *Holton v. State*, 189 So. 3d 697,700 (¶¶9-12) (Miss. Ct. App. 2016). "Once a party knows of, 'or with the exercise of reasonable diligence may have discovered,' possible grounds, that party should move for a recusal." *Overstreet*, 17 So. 3d at 623 (¶5) (quoting *Tubwell v. Grant*, 760 So. 2d 687, 689 (¶8) (Miss. 2000)). If the defendant fails to raise these issues, it is "considered implied consent to have the judge go forward presiding over the case." *Id*.

¶20. In *Banana*, it was clear the judge was the former district attorney who handled the case pre-resolution. *Banana*, 635 So. 2d at 851. The Mississippi Supreme Court held that Banana had waived any issue with his trial judge because he "consented to the trial judge hearing his case." *Id*. at 854. Further, in *Tubwell*, 760 So. 2d at 659 (¶5), a defendant appealed a judge's ruling because the judge had once "filed and prosecuted a civil action against [him]." In that case, Tubwell never asked the judge to recuse himself. *Id*. at (¶8). The supreme court stated that "[o]ver the years, this [c]ourt has been quick to point out that it will not allow a party to take his chances with a judge about whom he knows the grounds for recusal and then, after he loses, file his motion." *Id*. (citing *Buchanan v. Buchanan*, 587 So. 2d 892, 897 (Miss. 1991)). The Mississippi Supreme Court "has consistently held that failing to object to a trial judge's appearance in a case can result in a waiver." *Id*. (citing *Foster v. State*, 716 So. 2d 538, 540 (¶7) (Miss. 1998)). An exception does exist, however, if the judge was once a prosecutor and actively involved in the prosecution of the defendant.

*Smith v. State*, 212 Miss. 497, 501, 54 So. 2d 739, 740 (1951). There are not sufficient facts in the record before this Court to trigger the automatic reversal requirement of *Jenkins* and *Overstreet*.

¶21.   The scenario in *Tubwell* is remarkably similar to what happened in this case. Day never raised an objection or filed a motion to recuse on the record. The defense never cross-examined Sciple about when the DNA analysis report was received, when the call to the district attorney's office was made or to whom it was made. Neither Judge Duncan nor District Attorney Kilgore ever had an opportunity to respond to the issue of recusal. The exact dates that the file was delivered to the district attorney's office (whether it was the current or former district attorney's office) were never developed in the record.[7] There is nothing in the record to indicate the presiding judge did anything as the district attorney in Day's case.

¶22.   Day argues facts in his brief that are assumptions not proven. Day asserts that Sciple spoke to Judge Duncan, yet that assertion of fact is contrary to the testimony that was elicited. There is nothing in the record to show that Judge Duncan was the district attorney on the phone call instead of Kilgore. Day never filed a motion for recusal and never sought

_____

[7] This glaring factual void is vitally important and potentially outcome determinative. If the file was miraculously prepared in two days and inexplicitly delivered to the district attorney's office before Judge Duncan was sworn in on June 2, 2017, then he could potentially be considered involved in a prosecutory role against the defendant. But if Sciple meant what he said when he testified, under oath, that he discussed the case with "your office" (referring to Kilgore) and the file was delivered to District Attorney Kilgore (who was the district attorney when the case was presented to the grand jury), then Judge Duncan was not in a participatory role in this case and not subject to an *Overstreet* recusal. It is important to note that Day caused this void by never raising the issue in the trial court.

11

a ruling from the trial court on recusal. The criminal justice system should not hinge on facts unproven or motions never filed. To find otherwise would allow defendants to take their chances at trial and, if convicted, then raise a recusal issue for the first time on appeal without a sufficient record and without ever allowing the trial judge or the district attorney an opportunity to develop the facts in response. Because the record does not show that Judge Duncan was involved in Day's prosecution while he was still the district attorney, there is no basis for this Court to hold that Judge Duncan was required to recuse sua sponte. Therefore, this issue is without merit. This ruling does not foreclose Day's rights to address this issue in a motion for post-conviction relief that would allow the facts to be developed.

> II.     *Whether the circuit court erred by allowing the prosecutor to lead Sciple's testimony.*

¶23.    Day next claims that it was error for the circuit court to overrule his objection to a leading question asked by the State. The objection came during Sciple's direct examination:

Q.     As part of the booking process, is Mr. Day's date of birth obtained?

A.     It is, yes.

Q.     And what's his date of birth?

A.     I think I have it - it's on my Waiver of Rights form that I advised him of.

Q.     Ralph, if the -- I'm sorry. Investigator Sciple, if the booking sheet says 6-4-79, would that be –

BY MR. SOREY:    Objection, Your Honor, to the leading.

BY THE COURT:    Overruled.

Q.     If the booking sheet said 6-4 of '79, would that be correct?

12

A.     Yes, it sounds right.

Q.     Approximately thirty-seven years old at the time?

A.     Yes, sir.

Day claims that because his age at the time of the crime was an essential element, it was error for the State to establish his age through a leading question. "[T]he decision to allow leading questions rests within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Seales v. State*, 138 So. 3d 282, 284 (¶8) (Miss. Ct. App. 2014) (quoting *Parks v. State*, 930 So. 2d 383, 387 (¶9) (Miss. 2006)).

¶24.   Section 97-3-65(1)(a) required the State to prove that Day was over the age of seventeen when he had sex with a minor who was thirty-six or more months younger than he was. "In order to develop preliminary matters, leading questions are often used." *Seales*, 138 So. 3d at 284 (¶8) (citing *Gates v. State*, 936 So. 2d 335, 341 (¶23) (Miss. 2006)). Rule 611 of the Mississippi Rules of Evidence indicates that leading questions are not appropriate on direct examination "except as necessary to develop the witness's testimony."

¶25.   There is no doubt that Day's age was relevant information for the jury to hear as an essential element of the charge. Even if Judge Duncan had sustained the objection as to leading, Sciple would have eventually testified to Day's date of birth because that information was within the investigative file he brought to trial. Those papers certainly could have been used to refresh his memory under Rule 612 of the Mississippi Rules of Evidence if Sciple had not been able to recall Day's date of birth. The investigative file Sciple brought with him had already been produced to the defense in discovery and surely the defendant

13

cannot claim surprise as to his own age. Sciple indicated during his testimony that he "[thought] he had [the date of birth]" on one of the forms he brought with him that day. Pursuant to Rule 611 of the Mississippi Rules of Evidence, "the court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence" in order to "make those procedures effective for determining the truth" and "avoid wasting time." The trial court has discretion in the "mode and order of examining witnesses," and overruling the objection was not an abuse of discretion.

> III. *Whether the State failed to prove that the crime occurred on or about April 1, 2017.*

¶26. Day argues that the State failed to prove that the crime occurred on April 1, 2017, which was the date included in the indictment and the jury instructions. The indictment returned by the grand jury charged Day with committing statutory rape "on or about April 1, 2017." Jury Instruction S-1 stated:

> The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that **on or about April 1, 2017** in Neshoba County, Mississippi, the Defendant, Joshua Heath Day, did willfully, unlawfully, and feloniously have sexual intercourse with [Jane], at a time when [Jane] was a child over the age of fourteen (14) years, but under the age of Sixteen (16) years, and when the said Joshua Heath Day was over the age of seventeen (17) and was more than thirty-six (36) months older than said [Jane], and not the spouse of [Jane], then it is your duty to find the Defendant guilty as charged.

(Emphasis added). Day argues that "given the testimony elicited at trial, no reasonable person could have found beyond a reasonable doubt that Appellant committed statutory rape on April 1, 2017." However, the Mississippi Supreme Court has held that "[w]here, as here, 'on or about' language is used in an indictment, the government is not required to prove an

14

exact date so long as a date [ ] **reasonably near** is established." *McBride v. State*, 61 So. 3d 138, 150 (¶51) (Miss. 2011) (emphasis added) (citing *United States v. Mata*, 491 F.3d 237, 243 (5th Cir. 2007)). The question for this Court to consider "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted).

¶27. In *McBride*, the Mississippi Supreme Court affirmed the conviction and held that a two-month variance between the dates alleged in the indictment and the proof presented at trial did not cause prejudice to McBride. *McBride*, 61 So. 3d at 150 (¶52). In this case, the variance is a few weeks at most. Day fails to recognize that the indictment and the offense-tracking jury instruction charged the crime with "on or about" language and not a specific date. Day has not shown any prejudice by the time frame set forth in the indictment and the offense-tracking jury instruction. Jane's testimony at trial indicated that between January 2017 and April 2017, Day had sexual intercourse with her over ten times. While the record does indicate a small discrepancy in whether Jane was six or nine weeks pregnant when she went to her May 15, 2017 doctor's appointment, the dates are still "reasonably near" the dates alleged in the indictment and the offense-tracking jury instruction. Jane testified that she was about six weeks pregnant at the time of the miscarriage on May 15, 2017. That would have dated the alleged crime to late March or early April 2017. Alternatively, Dr. Nelson testified that Jane was approximately nine weeks pregnant at the time of the miscarriage on May 15, 2017. That would have dated the alleged crime to on or about mid March to early April

15

2017. The "on or about" language contained in both the indictment and the offense-tracking jury instruction did not limit the date of the crime to only April 1, 2017. That testimony proved it occurred on or about April 1, 2017, or "reasonably near" that date. The small variance in time would not cause a "rational trier of fact" to find the weight of the evidence did not support the "on or about" date alleged in the indictment and offense-tracking jury instruction. This issue is without merit.

*IV.    Whether the circuit court erred in admitting the DNA evidence.*

¶28.    As discussed above, the products of conception recovered after Jane's D&C procedure were destroyed following analysis by the Scales Laboratory. Sciple testified that the destruction occurred due to the Neshoba County Sheriff's Department not having appropriate means to store and preserve the products of conception for an extended period of time, and that he was granted permission for its destruction by the district attorney's office. Before trial, Day filed a motion for DNA examination that argued the results of the DNA analysis "may be exculpatory" and that the buccal swabs taken from Day and Jane, along with the products of conception, should be retested by the defense. Following a hearing on the motion and the discovery that the products of conception had been destroyed, Day filed a motion to dismiss or, in the alternative, suppress all DNA evidence. The State responded by arguing that the products of conception were a biohazard and that the State could not adequately store and preserve the DNA evidence for a extended period of time. The motions were denied. Day argues on appeal that his due-process constitutional rights were violated when the circuit

16

court overruled his motion to suppress and allowed the admission of the DNA analysis.[8]

¶29.    Day argues a specific due process violation because the evidence was destroyed and he is still in custody.  The United States Supreme Court in *Trombetta* cemented the State's obligation to keep biological evidence but limited that obligation "to evidence that might be expected to play a significant role in the suspect's defense."  *California v. Trombetta*, 467 U.S. 479, 488-89 (1984).  The Court set forth a two-part test for the defendant to claim a constitutional violation.   The test requires that the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by any other reasonably available means."  *Id*. at 489.  Following *Trombetta*, the United States Supreme Court added a third requirement to the test that the destruction must not be done in bad faith.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Notably, the United States Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Id*.

¶30.    If the first part of the *Trombetta* test is not met, it is not necessary to consider the remaining prongs.  *Harness v. State*, 58 So. 3d 1, 6 (¶18) (Miss. 2011).  In *Harness*, the

---

[8] The destruction of the products of conception without preserving a sample thereof before destruction may have been inconsistent with Mississippi Code Annotated section 99-49-1 (Rev. 2015).  That section imposes requirements for preservation of biological evidence.  However, Day did not raise any issue regarding a violation of the statute at trial, nor has he raised this issue on appeal.  That statute provides that a court "may impose appropriate sanctions and order appropriate remedies" if it finds that the biological evidence was destroyed in violation of the statute's requirements. Miss. Code Ann. § 99-49-1(6). Therefore, even if a violation of that statute had been established, the trial court has discretion to determine what sanctions or remedies would be "appropriate."  In this case, the issue is waived because Day failed to raise a violation of the statute at trial or on appeal.

17

defendant was convicted of aggravated DUI. *Id*. at 2 (¶2). At the time of the accident, a blood sample was taken from Harness. *Id*. at (¶4). Harness's blood was tested "four times on two occasions." *Id*. at 5 (¶15). All four tests indicated Harness was over the legal limit to operate a vehicle. *Id*. at (¶17). The blood sample, however, was destroyed without the State providing Harness the opportunity to test the blood himself. *Id*. at (¶14). The supreme court found that there was no due-process violation as the evidence in question was inculpatory and not exculpatory. *Id*. at 4-6 (¶¶12-19). The same can be said here. The results of the DNA analysis performed by the Scales Laboratory resulted in a 99.99992 percent probability that Day fathered the fetus. The laboratory director testified and was subject to cross-examination, and Day produced no evidence to call into question the validity of the test or its incriminating results.[9]

¶31. Day has failed to meet the first prong of *Trombetta* that the products of conception would produce exculpatory evidence. The products of conception produced inculpatory evidence. Further, there is no evidence in the record that provides any proof of bad faith. Sciple testified that the reasons for the destruction were threefold. First, the evidence was considered a biohazard. Second, as such, storage and preservation resources were not available for long-term storage and security. Finally, the district attorney authorized its destruction after considering the first two concerns. There is no proof that the decision to destroy the products of conception used for DNA analysis was made in bad faith. We find

---

[9] At the hearing on the motion to suppress, Day called no witnesses. At trial, Day never questioned the DNA examiner about any abnormality or deviation from policy, procedure, or protocol, which possibly could call into question the result of the DNA analysis.

that the DNA evidence was inculpatory and does not rise to the standards set forth in *Trombetta* to support a violation of Day's rights to due process. This issue is without merit.

*V.*     *Whether the circuit court erred in admitting evidence of prior bad acts.*

¶32.   Finally, Day claims that the circuit court erroneously allowed Jane to testify that he previously touched her "chest" on prior occasions before he had sex with her. Specifically, Day argues that the testimony of the victim was "clearly offered to show [Day] had a propensity to engage in such behavior and that he acted in conformity with a bad character." "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses his discretion so as to be prejudicial to the accused, the Court will not reverse" evidentiary rulings. *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010) (quoting *Price v. State*, 898 So. 2d 641, 653 (Miss. 2005)).

¶33.   Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b). "In sexual-abuse cases, prior bad acts may be admissible to show the defendant's intent, plan, preparation, motive, and opportunity to 'groom' the victim to allow the defendant better access and opportunity to commit the sexual acts upon the child." *Richards v. State*, 2017-KA-00809-COA, 2019 WL 1771923, at *6 (¶32) (Miss. Ct. App. April 23, 2019). In *Richards*, this Court found that the perpetrator of a sexual act against a child first starts with the process of grooming the child "over days or months to gain control,

19

access, and opportunity over the child." *Id*. "That experience, lived out by the child, gives meaning and context to the child's story" that the jury needs to hear in order to form a complete understanding of the crime committed. *Id*. Arguably, Day's touching Jane's "chest" before he began their sexual relationship was evidence of his intent, plan, preparation, motive, and opportunity as to the crime in question.

¶34. It is well known and well settled in trial practice that "[i]n order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." *Gore*, 37 So. 3d at 1048 (¶13) (quoting *Carr v. State*, 873 So. 2d 991, 1004 (¶35) (Miss. 2004)). Yet here, the record is silent as to any objection Day made regarding the testimony he now complains of on appeal. Because Day failed to object, the issue is waived on appeal and not properly before us. The circuit court did not err by allowing Jane to testify that Day repeatedly touched her "chest" before their relationship turned sexual.

¶35. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, TINDELL AND C. WILSON, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; McCARTY, J., JOINS IN PART. McDONALD AND McCARTY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.; WESTBROOKS, J., JOINS IN PART.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶36. I agree with the majority's finding that there is sufficient evidence to support Day's guilty verdict. I also agree that there is insufficient evidence in the record to support the judge's recusal on direct appeal. I part from the majority opinion because I believe the DNA

evidence had exculpatory value. Its destruction goes hand-in-hand with whether the trial judge should have recused and whether those issues are more ripe for a motion for post-conviction relief.

¶37. In his brief, Day asserts that the trial judge should have recused because the trial judge served as the district attorney for Neshoba County until June 1, 2017. Day also maintains that the trial judge ordered the destruction of the product of conception while acting as the district attorney. We can take judicial notice that the trial judge was the district attorney at the time of Day's arrest and bond. *See* M.R.E. 201(a)-(d); *Coleman v. Gordon*, 16 So. 340, 340 (Miss. 1894). He was also still the district attorney when the case was bound over to the grand jury, putting the case squarely in the jurisdiction of the circuit court and the district attorney.[10] *See* Miss. Code Ann. § 13-7-7 (Rev. 2019).

¶38. Prior to trial, Day filed a motion to re-test the DNA from the product of conception; however, the circuit court denied the motion because it had been destroyed. Subsequently, Day filed a motion to dismiss or, alternatively, to suppress the DNA test results. Following a hearing, the circuit court denied the motion, and the test results were admitted as evidence at trial. The majority states that Day did not properly raise the issue in reference to Mississippi Code Annotated section 99-49-1(3) (Rev. 2015), and therefore the issue is waived. I do not agree. While Day did not name the statute in his motion to dismiss, he did

---

[10] After his initial arrest, Day was released from jail on a bond on April 24, 2017. According to established precedent, once a person is released on bond, he waives his right to a preliminary hearing and is bound over to await a grand jury's action, which puts him in the province of the district attorney. *See Stubbs v. State*, 220 So. 3d 1014, 1018 (¶24) (Miss. 2017).

21

raise and preserve the fundamental issue that his due process rights were violated by the destruction of the product of conception.[11]

¶39. Day asserts that the circuit court erred in allowing the State to introduce DNA evidence that was destroyed by the State prior to his trial. As a result, he was unable to have an independent expert examine the evidence, which was in violation of his due process rights. In *State v. McGrone*, 798 So. 2d 519, 523 (¶11) (Miss. 2001), the Mississippi Supreme Court held that the following was required in order to find a due process violation by the State in a perseveration of evidence case:

> (1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the prosecution's destruction of the evidence must have been in bad faith.

*See also California v. Trombetta*, 467 U.S. 479, 489 (1984) (developing a two-prong test regarding the destruction of DNA evidence).

¶40. Day asserts that the State destroyed DNA evidence that may have been exculpatory in nature; however, "[t]he mere possibility the evidence might aid the defense does not satisfy the constitutional materiality standard." *Childs v. State*, 133 So. 3d 348, 351 (¶11) (Miss. 2013) (quoting *United States v. Binker*, 795 F.2d 1218, 1230 (5th Cir. 1986)). As to

---

[11] *See Banks v. State*, 725 So. 2d 711, 714 (¶11) (Miss. 1997), *distinguished on other grounds by Roberson v. State*, 199 So. 3d 660, 666-67 (¶¶21-25) (Miss. 2016). In *Banks* (which predated the enactment of Mississippi Code Annotated section 99-49-1 (Rev. 2015)), the Mississippi Supreme Court stated that "[e]ven if Banks did not cite Uniform Rules of Circuit and County Court Rule 9.04 in his motion to suppress during his trial, he raised and preserved the fundamental issue on this point, which is that his due process rights were violated by the State's destruction of the sandwich before he could examine it." *Id.*

22

the first prong, the Mississippi Supreme Court identified an example of exculpatory evidence in *McGrone*, 798 So. 2d at 521 (¶5). *See also Childs*, 133 So. 3d at 351 (¶11). In *McGrone*, the defendant was shot in the leg by a police officer before he was apprehended and wanted to procure the pants he was wearing at the time to show that he was attempting to flee when he was shot by the officer. *McGrone*, 798 So. 2d at 521 (¶2). The Mississippi Supreme Court deemed the pants to be exculpatory. *Id.* at 523 (¶12).

¶41.   I would find that the DNA evidence from the product of conception was exculpatory in nature. Day maintained that he was not the father of the victim's baby; therefore, the evidence possessed some apparent evidentiary and exculpatory value before it was destroyed. At trial, the State relied on the results of the DNA test performed after samples were taken from the victim, Day, and the product of conception. As mentioned, it was determined that Day's probability of paternity was 99.99992 percent. Admittedly, this incriminates Day. However, Day was unable to have an independent test to verify and perhaps challenge the reliability of the sample or the test, if necessary. The majority opines that Day never questioned the DNA examiner about any abnormalities, but he was clearly at a disadvantage without access to the sample. The Mississippi Supreme Court has held that "[a] defendant should be permitted to inspect tangible evidence that might be used against him or which might be useful in his defense." *Richardson v. State*, 767 So. 2d 195, 199 (¶16) (Miss. 2000) (citing *Armstrong v. State*, 214 So. 2d 589, 596 (Miss. 1968)). Accordingly, the first prong is met.

¶42.   The second prong is met because Day was unable to test the DNA evidence from the

product of conception because it was destroyed. As a result, the DNA evidence was such that Day would be unable to obtain comparable evidence by other reasonably available means.

¶43. The remaining question is whether Day proved that the State destroyed the evidence in bad faith. Investigator Sciple testified at trial that the DNA sample was destroyed due to lack of storage for the biohazardous material. He also destroyed the sample upon the instruction of the district attorney. Sciple's testimony during cross examination was gender specifically directed to *the* district attorney. The district attorney is charged to know his obligation under Mississippi Code Annotated section 99-49-1(3). "If the destruction of evidence was done as a matter of routine and with no fraudulent intent, there is no inference of bad faith." *Trollinger v. State*, 748 So. 2d 167, 172 (¶16) (Miss. Ct. App. 1999) (citing *Taylor v. State*, 672 So. 2d 1246, 1271 (Miss. 1996)).

¶44. Here, the trial record, in and of itself, does not reflect bad faith on the part of Sciple, who followed the district attorney's directive to destroy the product of conception. Whether there was bad faith on the part of the district attorney, who later became the presiding trial judge, deserves more attention. More needs to be developed on whether there were other storage or preservation options available to the State under Mississippi Code Annotated section 99-49-1(3). Day was distinctly disadvantaged by the lack of opportunity arising from his inability to perform an actual inspection of the sample.

¶45. While I agree with the majority that the trial court has the discretion to determine what sanctions or remedies would be "appropriate," I would also add that the trial judge has the

24

obligation to avoid any appearance of impropriety. Given the trial judge's title and role in the post-arrest and pre-indictment phases of Day's prosecution, one could reasonably question the appropriateness of the court's rulings regarding the destruction of the DNA sample.

¶46. For the foregoing reasons, I concur in part and dissent in part.

**McDONALD, J., JOINS THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**

**CARLTON, P.J., DISSENTING:**

¶47. I disagree with the majority's finding that the trial judge did not abuse his discretion by failing to recuse himself from Day's case sua sponte. This Court has held that "[d]isqualification is required where a judge formerly served as a lawyer in the same case except by agreement of the parties." *Overstreet v. State*, 17 So. 3d 621, 623 (¶7) (Miss. Ct. App. 2009) (citing Miss. Code Ann. § 9-1-11 (Rev. 2002); Miss. Code of Judicial Conduct Canon 3(E)(1)(b)). Furthermore, the Mississippi Constitution demands the disqualification of a judge where the judge "previously actively served in an accusatory role in the case as a prosecutor." *Id*. (citing *Jenkins v. State*, 570 So. 2d 1191, 1193 (Miss. 1990)).

¶48. The Mississippi Supreme Court has explained that "disqualification of a judge is both constitutional and statutory." *Jenkins*, 570 So. 2d at 1192. "Section 165 of the Mississippi Constitution of 1890 requires a judge to disqualify himself 'where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties.'" *Id*. Additionally, the Mississippi Code "requires disqualification where the judge may have been of counsel." *Id*.

25

(citing Miss. Code Ann. § 9-1-11 (Rev. 1972)). I therefore find that the trial judge was required by the Mississippi Constitution and the Mississippi Code to recuse from presiding over Day's trial. His failure to do so constitutes reversible error. *Kinney v. S. Miss. Planning & Dev. Dist. Inc.*, 202 So. 3d 187, 194 (¶20) (Miss. 2016). I therefore respectfully dissent.

¶49. The Mississippi Constitution and the Mississippi Code provide that "[n]o judge shall preside over a trial where, among other reasons, he 'may have been of counsel' except by the consent of the judge and parties." *Overstreet*, 17 So. 3d at 623 (¶5) (citing Miss. Const. art. 6, § 165; Miss. Code Ann. § 9-1-11 (Rev. 2002)). However, "[t]he right to recusal may be waived." *Id.* As set forth by the majority, "[o]nce a party knows of, 'or with the exercise of reasonable diligence may have discovered,' possible grounds, that party should move for a recusal." *Id.* (citing *Tubwell v. Grant*, 760 So. 2d 687, 689 (¶8) (Miss. 2000)). "Generally, the failure to do so will be considered implied consent to have the judge go forward presiding over the case." *Id.*

¶50. However, "an exception to this rule exists with respect to prior participation by the judge as a prosecutor." *Id.* (citing *Smith v. State*, 212 Miss. 497, 502, 54 So. 2d 739, 741 (1951)). The Mississippi Supreme Court has held that "[i]n such a case, an appellate court can hear the matter sua sponte." *Id.* (citing *Moore v. State*, 573 So. 2d 688, 689 (Miss. 1990)). Because the trial judge previously served as the district attorney in this matter, the Mississippi Constitution and statutory law required the trial judge to recuse. Miss. Const. art. 6, § 165; Miss. Code Ann. § 9-1-11. Furthermore, based on precedent cited above, this Court may address Day's assignment of error regarding recusal.

¶51. On appeal, Day asserts that the trial judge should have recused because the trial judge served as the district attorney who took prosecutorial action against Day. Day maintains that the trial judge ordered the destruction of the "product of conception" while acting as the district attorney. On appeal, the State asserts that Day admits "the record is not clear when" the product of conception was destroyed. The State maintains that because the record does not indicate how long the DNA testing took or when the product of conception was destroyed, this Court should not consider this issue. *See Ivy v. State*, 103 So. 3d 766, 770 (¶13) (Miss. Ct. App. 2012) (This Court "will not consider matters which are outside the record and must confine [itself] to what actually does appear in the record.").

¶52. "'This Court reviews a judge's refusal to recuse himself using the manifest error standard." *Kinney*, 202 So. 3d at 194 (¶20) (Miss. 2016). A judge's "impartiality is presumed, and the presumption must be overcome by the appellant in order for this Court to find manifest error." *Scott v. State*, 8 So. 3d 855, 859 (¶13) (Miss. 2008). The supreme court has set forth that "[t]he question is whether or not a reasonable person, with knowledge of all the circumstances, would harbor doubts about the judge's impartiality." *Id*. (internal quotation mark omitted) (citing *Davis v. Neshoba Cty. Gen. Hosp*., 611 So. 2d 904, 905 (Miss. 1992)); *accord* Miss. Const. art. VI, § 165).[12]

---

[12] The Mississippi Supreme Court has held that as follows:

In Mississippi, disqualification of a judge is both constitutional and statutory. Section 165 of the Mississippi Constitution of 1890 requires a judge to disqualify himself "where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties." The Mississippi Code, in addition to requiring disqualification for relation of the judge by

¶53.   "Under Canon 3 of the Code of Judicial Conduct, an appellate court, in deciding whether a judge should have disqualified himself from hearing a case uses an objective standard." *Tubwell*, 760 So. 2d at 689 (¶7).   Mississippi Code of Judicial Conduct Canon 3(E) sets forth in relevant part as follows:

> E.   Disqualification.
>
> (1)   Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where:
>
> (a)   the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> (b)   the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it . . . .

¶54.   For Day to overcome the presumption that the trial judge was qualified and unbiased, Day "must produce evidence of a reasonable doubt about the validity of the presumption." *Kinney*, 202 So. 3d at 194 (¶20).   The supreme court has explained that "[r]easonable doubt may be found when there is a question of whether 'a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality.'" *Id*. "Said another way, 'the presumption is overcome only by showing beyond a reasonable doubt that the judge was

---

affinity or consanguinity, requires disqualification where the judge may have been of counsel.

*Jenkins*, 570 So. 2d at 1192 (citing Miss. Code Ann. § 9-1-11 (1972)).

biased or unqualified.'" *Id*.

¶55.    In the present case, the trial judge served as the district attorney in Neshoba County for the sixteen years preceding Governor Phil Bryant's appointment of him to serve as a circuit court judge.[13] We take judicial notice that Governor Bryant appointed this individual to fill a vacancy for a circuit-court-judge position; that the appointment became effective on June 2, 2017; and that he was sworn into office on June 6, 2017.  *Supra* note 13.

¶56.    The following facts[14] occurred with respect to the case before us during the trial judge's tenure as the district attorney: "On or about April 1, 2017," Day committed the crime of statutory rape (per his indictment).  The record reflects that on April 20, 2017, Jane discovered she was pregnant.  Day was arrested for statutory rape on April 23, 2017.  Dr. Nelson testified that Jane had miscarried on May 15, 2017, and Dr. Nelson performed the D&C procedure on May 19, 2017.  Investigator Sciple then sent DNA samples from Day, Jane, and the product of conception to Scales Laboratory for testing on May 22, 2017.

¶57.    The record reflects that on August 22, 2017, more than two months after the trial judge was sworn in as a circuit court judge, Day was indicted for statutory rape.

¶58.    The record further reflects that at some point during the investigation and prior to Day's trial, Sciple destroyed the product of conception.  At trial, District Attorney Kilgore

---

[13] Admin. Office of Courts, State of Miss. Judiciary, *Circuit Judge Marc Duncan Sworn In June 6*, Mississippi Courts Newsletter (October 2017), at 13, https://courts.ms.gov/news/newsletters/MS%20Courts%2010.17%20for%20website.pdf.

[14] We agree with the majority that the following documents are not part of the actual record on appeal and cannot be considered: (1) the document from Scales Laboratory dated May 30, 2017, which contained DNA results, and (2) an email to Investigator Sciple informing him of the results.

asked Sciple about the location of the product of conception at issue. Sciple answered as follows:

> It was destroyed because it was human tissue and I did not have anywhere to store human tissue for a period of time and I did contact your office and was advised to go ahead and dispose of it which I took it to the Jackson Crime Lab where they do the autopsies, and they disposed of it for me.

¶59. During cross-examination of Sciple, the following exchange occurred between Day's attorney and Sciple:

Q: And the product of conception, you had it destroyed?

A: Correct, yes.

Q: And I believe you testified that you called the District Attorney and asked him what to do with it?

A: That's correct, yes.

Q: And he told you that you could destroy that?

A: That is correct.

Q: Y'all didn't get a court order for that to be destroyed did you?

A: No, sir.

The record is not clear when Sciple received these instructions.

¶60. As stated, Canon 3(E) of the Mississippi Code of Judicial Conduct provides that "[a] judge should disqualify himself in a proceeding where his impartiality might be reasonably questioned by a reasonable person knowing all the circumstances . . . ." The supreme court has recognized that "such circumstances include when the judge had . . . personal knowledge of disputed evidentiary facts concerning the proceeding." *Patton v. State*, 109 So. 3d 66, 78

30

(¶20) (Miss. 2012). In the present case, the record reflects that the trial judge was the district attorney at the time that Day was arrested for statutory rape and at the time that the product of conception was sent to the laboratory for DNA testing. As explained above, the record confirms that these events occurred prior to the trial judge's appointment as a circuit court judge, which became effective on June 2, 2017.

¶61. Regardless, the central issue here is that "due process demands disqualification when a judge previously actively served in an accusatory role in the case as a prosecutor." *Overstreet*, 17 So. 3d at 623 (¶7). Day cites *Jenkins v. State*, 570 So. 2d 1191 (Miss. 1990), and *Brent v. State*, 929 So. 2d 952 (Miss. Ct. App. 2005), in support of his argument that the trial judge should have recused because the trial judge served as the district attorney who took prosecutorial action against Day.

¶62. In *Jenkins*, 570 So. 2d at 1191, the trial judge had served as the county prosecuting attorney at the time of the appellant's indictment. The appellant objected to the former prosecutor sitting as the judge and he asked for the case to be continued until a different judge returned and could preside over the trial. *Id*. The trial judge refused the request for a continuance on the basis that "he did not remember having seen [the appellant] before nor being involved in any preliminary hearings or [g]rand [j]ury proceedings." *Id*. Upon review, the supreme court found that "a reasonable person knowing that [the trial judge] acted as prosecutor during the indictment of [the appellant] would certainly question his impartiality." *Id*. at 1193. The supreme court explained that "[t]he very functions involved in the performance of the two positions are contradictory and no person can be considered to be

31

impartial while that person is also acting as a partisan." *Id*. The supreme court held that the appellant had been denied due process and accordingly reversed and remanded for a new trial. *Id*.

¶63.    In *Brent*, 929 So. 2d at 954 (¶3), the supreme court examined whether the trial judge committed reversible error by denying the appellant's motion to recuse. In that case, the trial judge served as a county court judge prior to his selection as a circuit court judge. *Id*. at 955 (¶4). "While in his capacity as county court judge, [the trial judge] issued the search warrant that lead to [the appellant's] arrest, and ultimately to the subsequent indictment that brought [the appellant] before [the trial judge] in his current capacity as circuit court judge." *Id*. One of the major elements of the appellant's defense at trial was an attack on the validity of the warrant signed by the trial judge. *Id*. The supreme court also found important "the fact that [the trial judge] once served the State of Mississippi with distinction as a Hinds County Assistant District Attorney, and prosecuted [appellant] on a charge of aggravated assault, an offense which was used to charge [the appellant] as a habitual offender." *Id*. The trial judge denied the appellant's motion to recuse, and he "stated [o]n the record that [he] had no personal bias or prejudice, remembered no facts concerning the proceedings, and could not even remember [the appellant] from prior encounters." *Id*. The supreme court ultimately held that "[t]he trial judge committed manifest error in failing to recuse himself, despite his subjective pronunciations that he held no bias against [the appellant,]" and the supreme court reversed and remanded the case for a new trial. *Id*. at (¶6).

¶64.    Additionally, in *Overstreet*, 17 So. 3d at 624 (¶10), this Court found reversible error

32

where the trial judge ruled on the appellant's motion for postconviction relief "despite the fact that [the trial judge] appeared as one of the prosecutors at the very plea hearing at issue." This Court found that in so doing, the trial judge "served as prosecutor and judge in the same cause." *Id*. This Court held that "[t]he functions of a zealous advocate and a neutral adjudicator inherently contradict one another." *Id*. (citing *Ryals v. State*, 914 So. 2d 285, 287 (¶10) (Miss. Ct. App. 2005)). This Court clarified, however, that "such contradiction provides no finding or conclusion that [the trial judge] did not in fact act as a neutral adjudicator in ruling on [the appellant's] post-conviction relief motion." *Id*. This Court explained that "[t]he law, however, does not require that the judge actually be biased in order to recuse[;]" rather, "[i]t simply requires that the functions of the prosecutor and the judge be performed by different parties." *Id*. (citation omitted).

¶65. In *Miller v. State*, 94 So. 3d 1120, 1121 (¶1) (Miss. 2012), the appellant was convicted of aggravated assault and forcible rape of his girlfriend's minor daughter. The appellant made an ore tenus motion for the trial judge to recuse himself on the basis that the trial judge "had served as a youth-court prosecutor at the shelter hearing concerning [the daughter's] custody." *Id*. at 1122 (¶4). The shelter hearing occurred as a result of the appellant's aggravated assault and forcible rape charges. *Id*. The trial judge denied the motion to recuse, explaining that "since the youth-court matter was civil, not criminal; since [the appellant] was not a party to that case; and since the youth court considers only the best interest of the child, recusal was not required in [the defendant's] criminal trial concerning the felony charges which had brought about the youth-court shelter hearing." *Id*. On appeal, the supreme court

found that the trial judge abused his discretion when he refused to recuse himself from trial, and the supreme court reversed and remanded the case. *Id*. at 1126 (¶¶15-16). The supreme court held that "[c]learly, by serving as the presiding judge in the circuit-court criminal trial involving the same victim, the same offenses[,] and the same perpetrator as in the youth-court proceedings in which he served as the prosecutor, the trial judge in today's case placed himself in a situation in which his impartiality might be questioned by a reasonable person knowing all the circumstances." *Id*. at (¶15) (citing Miss. Code of Judicial Conduct Canon 3E(1)). The supreme court further found that the trial judge should have recused himself because he "may also have personal knowledge of disputed evidentiary facts concerning the proceeding, due to his participation in the youth-court shelter hearing addressing the same facts." *Id*.

¶66. In the case before us, the trial judge acted in two roles that inherently contradicted each other in the case. The Mississippi Constitution and the Mississippi Code required the trial judge to recuse from presiding over Day's trial due to his prior participation in the matter as the district attorney. Furthermore, like *Miller*, the trial judge also had personal knowledge of disputed evidentiary facts concerning the proceeding. Under these factual circumstances, a reasonable person knowing all of the circumstances would harbor doubts about the trial judge's impartiality. I therefore find that this Court must reverse this case and remand it for a new trial, and I respectfully dissent.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION. WESTBROOKS, J., JOINS THIS OPINION IN PART.**